GEORGE LLP
Keith J. Wesley (State Bar No. 229276)
kwesley@georgellp.com
Anthony T. Lombardo (State Bar No. 323216)
alombardo@georgellp.com
2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

Attorneys for Defendant
Willow Health Services, Inc.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

KRISTY WILCE,

Plaintiff,

vs.

WILLOW HEALTH SERVICES, INC.,

Defendant.

Case No. 2:26-cv-02465-DAD-AC

Hon. Dale A. Drozd
Magistrate Allison Claire

**DEFENDANT WILLOW HEALTH SERVICES, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1), (B)(2), (F); MEMORANDUM OF POINTS AND AUTHORITIES**

*[Filed Concurrently with Declaration of Anthony T. Lombardo and Declaration of Joel Green]*

Date: October 19, 2026
Time: 1:30 p.m.
Place: Robert T. Matsui Federal Courthouse
501 I Street, 2nd Floor
Sacramento, California 95814
Courtroom 4

Filed Date: July 15, 2026
Trial Date: None Set

TO PLAINTIFF AND ITS COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on October 19, 2026, at 1:30 p.m., or as soon thereafter as counsel may be heard, in the Courtroom of the Honorable Dale A. Drozd, United States District Judge for the Eastern District of California, located at the Robert T. Matsui Federal Courthouse, 501 I Street, 2nd Floor, Sacramento, California 95814 (Courtroom 4), Defendant Willow Health Services, Inc. ("Willow") will and hereby does move this Court to dismiss Plaintiff Kristy Wilce's Complaint without leave to amend pursuant to Rules 12(b)(1), (b)(6), and (f) of the Federal Rules of Civil Procedure. This Motion is made upon the following grounds:

The Complaint does not demonstrate Article III standing. Plaintiff fails to identify what personal information she purportedly transmitted to Willow. The Court should dismiss this case under Rule 12(b)(1) without leave to amend.

Plaintiff fails to state a claim for relief. Her failure to specify what personal information she purportedly provided Willow dooms all her claims. She also consented to the sharing of her information by purportedly accessing startwillow.com and purchasing GLP-1s therefrom. That defeats all of her claims, especially her privacy-related ones.

She also fails to state a claim on numerous grounds:

- She fails to state a claim under ECPA and CIPA as she does not sufficiently allege that her purported personal information is covered under these statutes and she also alleges improperly that Willow could eavesdrop on its own conversation/communication, which it cannot, as a matter of law.
- She fails to state a claim under the CMIA as she fails to sufficiently allege that her purported personal information qualifies as medical information that is individually identifiable. She also fails to sufficiently allege that anyone ever accessed or read her information.
- She fails to state claims under the CCPA, as they do not provide a private right of action, she failed to serve a pre-suit notice, her claims do not concern a data breach, and she fails to sufficiently allege that Willow disclosed private information.
- She fails to state a claim for breach of contract as she does not allege a breach, much less with plausibility.
- She fails to state a claim for unjust enrichment because no such claim may lie where there is an express contract between the parties, which is what she alleges in her breach of contract claim.

- She fails to state a claim for invasion of privacy because she only prays for monetary damages, which is barred under the law. She also consented to the sharing of her data and does not specify what private information she purportedly sent to Willow.

Finally, pursuant to Rule 12(f), the Court should strike the class-action allegations, as Plaintiff waived the right to bring a class action, as per Willow's Terms and Conditions.

Counsel for Willow hereby certifies, as per the Court's Standing Order § I.C., that this Motion follows a conference of counsel on August 28, 2026. Declaration of Anthony T. Lombardo ("Lombardo Decl."), at ¶ 6. During this conference, Counsel discussed the bases for Willow's motion, as well as the relief Willow seeks, including the striking of the class-action allegation. Counsel for Willow noted that Plaintiff Wilce, like former Plaintiff Jacobson, does not have standing, that she states a claim for none of her ten causes of action, and that she entered into a class action waiver. Both sides, though acting in good faith, were unable to come to an agreement that would have obviated the need for this Motion. It is thus warranted. *Id.*; *see also id.* ¶ 7.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Declarations of Anthony T. Lombardo and Joel Green filed concurrently herewith, all of the pleadings, files, and records in this proceeding, all other matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

DATED: August 28, 2026

GEORGE LLP
Keith J. Wesley
Anthony T. Lombardo

By: */s/Keith J. Wesley*
Keith J. Wesley
Attorneys for Defendant
Willow Health Services, Inc.

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ..... 9

II. STATEMENT OF FACTS ..... 10

A. Plaintiff's Allegations ..... 10

1. Plaintiff claims she accessed Willow's website. ..... 10

2. Plaintiff claims that her information was intercepted by purported Tracking Technology. ..... 11

3. Plaintiff's Alleged Injuries ..... 11

4. Plaintiff's Claims ..... 12

B. Reality ..... 12

1. Plaintiff consented to Willow's Terms and Conditions and Privacy Policy. ..... 12

III. LEGAL STANDARD ..... 14

A. Fed. R. Civ. P. 12(b)(1) ..... 14

B. Fed. R. Civ. P. 12(b)(6) ..... 14

C. Fed. R. Civ. P. 12(f) ..... 14

IV. THE COURT SHOULD DISMISS THE COMPLAINT UNDER RULE 12(B)(1) BECAUSE PLAINTIFF LACKS ARTICLE III STANDING. ..... 15

A. The Complaint Does Not, on Its Face, Allege Standing. ..... 15

V. THE COURT SHOULD DISMISS THE COMPLAINT UNDER RULE 12(B)(6) BECAUSE PLAINTIFF DOES NOT STATE A CLAIM. ..... 17

A. Plaintiff fails to state a claim under ECPA and CIPA (Claims 1–3) ..... 17

1. Claims 1–3: Plaintiff consented to the purported Tracking Technology. ..... 18

2. Claims 1–2: Plaintiff fails to sufficiently allege that her personal information was protected "content." ..... 19

3. Claim 3: Pen. Code § 632 does not apply to the parties to a communication, which Plaintiff alleges Willow to have been. ..... 20

B. Plaintiff fails to state a claim under the CMIA (Claim 4). ..... 21

C. Plaintiff fails to state a claim under the CCPA (Claims 5–7). ..... 22

**TABLE OF CONTENTS**
**(Continued)**

**Page**

D. Plaintiff fails to state a claim for breach of contract (Claim 8) ....22

E. Plaintiff fails to state a claim for unjust enrichment (Claim 9). ....23

F. Plaintiff fails to state a claim for invasion of privacy (Claim 10). ....24

VI. THE COURT SHOULD STRIKE THE CLASS-ACTION ALLEGATION UNDER RULE 12(F) DUE TO WAIVER. ....24

VII. THE COURT SHOULD DISMISS THE COMPLAINT WITHOUT LEAVE TO AMEND. ....26

VIII. CONCLUSION ....26

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753 (9th Cir. 2015) ..... 23

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..... 14

*Best v. Berard*, 837 F. Supp. 2d 933 (N.D. Ill. 2011) ..... 17

*Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025) ..... 15

*Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110 (N.D. Cal. 2020) ..... 18

*Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) ..... 15

*Calhoun v. Google, LLC*, 113 F.4th 1141 (9th Cir. 2024) ..... 18, 19

*Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806 (9th Cir. 2010) ..... 14

*Clinton v. Select Portfolio Servicing, Inc.*, 225 F. Supp. 3d 1168 (E.D. Cal. 2016) ..... 14

*Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117 (S.D. Cal. 2023) ..... 21, 24

*Delgado v. Meta Platforms, Inc.*, 718 F. Supp. 3d 1146 (N.D. Cal. 2024) ..... 22

*Frasco v. Flo Health, Inc.*, 349 F.R.D. 557 (N.D. Cal. 2025) ..... 25

*Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276 (9th Cir. 1983) ..... 26

*Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047 (N.D. Cal. 2025) ..... 18, 19, 26

*Maya v. Centex Corp.*, 658 F.3d 1060 (9th Cir. 2011) ..... 14

*Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d (S.D. Cal. 2023) ..... 15, 16, 17

*Moore v. Rodriguez*, 2021 WL 2222590 (S.D. Cal. June 2, 2021) ..... 24

**TABLE OF AUTHORITIES**
**(Continued)**

**Page**

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) ........ 14

*Safe Air for Everyone v. Meyer*
373 F.3d 1035 (9th Cir. 2004) ........ 14

*Sanders v. Apple Inc.*,
672 F. Supp. 2d 978 (N.D. Cal. 2009) ........ 14

*Shah v. Cap. One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) ........ 22

*Shroyer v. New Cingular Wireless Servs., Inc.*,
498 F.3d 976 (9th Cir. 2007) ........ 25

*Straubmuller v. Jetblue Airways Corp.*,
2023 WL 5671615 (D. Md. Sept. 1, 2023) ........ 15, 16

*Turner v. Nuance Commc'ns, Inc.*,
735 F. Supp. 3d 1169 (N.D. Cal. 2024) ........ 20

*Vaughan v. Quicken Loans Inc.*,
2025 WL 2104273 (C.D. Cal. July 8, 2025) ........ 24

*Wilson v. Rater8, LLC*,
2021 WL 4865930 (S.D. Cal. Oct. 18, 2021) ........ 21

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ........ 19, 20

*Zixiang Li v. Kerry*,
710 F.3d 995 (9th Cir. 2013) ........ 14

**STATE CASES**

*Arguelles-Romero v. Super. Ct.*,
109 Cal. Rptr. 3d 289 (2010), *as modified* (Ct. App. May 20, 2010) ........ 25

*Discover Bank v. Super. Ct.*,
113 P.3d 1100 (Cal. 2005) ........ 25

*Lance Camper Mfg. Corp. v. Republic Indem. Co.*,
51 Cal. Rptr. 2d 622 (Ct. App. 1996) ........ 24

**FEDERAL STATUTES**

18 U.S.C. § 2510 ........ 12

**STATE STATUTES**

Cal. Civ. Code § 56.06 ........ 12

**TABLE OF AUTHORITIES**
**(Continued)**

**Page**

Cal. Civ. Code § 56.10 ........ 12

Cal. Civ. Code § 56.101 ........ 12

Cal. Civ. Code § 1798.100 ........ 12, 22

Cal. Civ. Code § 1798.120(a)(1) ........ 23

Cal. Civ. Code § 1798.150 ........ 12, 22, 24

Cal. Pen. Code § 631 ........ 12, 17

Cal. Pen. Code § 632 ........ 12, 17, 18, 20

**RULES**

Fed. R. Civ. Proc. 11 ........ 9

Fed. R. Civ. Proc. 12(b)(1) ........ 14, 15, 26

Fed. R. Civ. Proc. 12(b)(6) ........ 14, 17, 26

Fed. R. Civ. Proc. 12(f) ........ 14, 24, 26

**I. <u>INTRODUCTION</u>**

Now showing at the Eastern District of California is the third installment of this baseless saga. The first of the trilogy was *Gaby Jacobson v. Willow Health Services, Inc.* (No. 2:26-cv-01552-WLH-AYP) (C.D. Cal. Feb. 13, 2026). *See* Lombardo Decl., Ex. A. Jacobson made the same allegations and raised the same claims that Plaintiff Kristy Wilce now makes. The problem there, however, was that Jacobson, contrary to what she alleged, never took the onboarding quiz (which did not exist at the time) in which her data was purportedly intercepted, and she never purchased any of Willow's GLP-1 products. When Counsel for Willow confronted Victor Sandoval, then Jacobson's counsel and currently Wilce's, he said that if Jacobson did not have standing, then "we'll just find another one, you know how that goes." *Id*., Ex. B. Willow moved to dismiss the *Jacobson* action on grounds of standing and because Jacobson failed to state a claim as to any of her ten causes of action. Sandoval, rather than opposing, filed a notice of dismissal.

Sandoval, as he boldly proclaimed, did find "another one." She is Plaintiff Kristy Wilce. That brings us to the sequel—*Kristy Wilce v. Willow Health Services, Inc.* (Case No. 4:26-cv-05445-KAW) (N.D. Cal. June 5, 2026) (*Wilce I*). *See* Lombardo Decl., Ex. C. As with most sequels, this was poorly executed. The Northern District of California, an improper venue, had nothing to do with Plaintiff, Willow, or the allegations she made. Willow confronted Sandoval with this. *Id*., Ex. D. Willow also noted that the same defects in the *Jacobson* complaint remained in Wilce's and that his Rule 11 obligations compelled dismissal. *Id*. Sandoval, as he did in *Jacobson*, dismissed the case.

Wilce then filed this case. But she—through Sandoval—did nothing to fix the defects in the Complaint, as per Rule 11. The allegations here are (à la copy-and-paste) virtually identical to those in *Jacobson* and *Wilce I*. *Compare* Lombardo Decl., Ex. A, at *passim* with *id*., *with* Ex. B, at *passim*, *and with* Compl., ECF No. 1, at *passim*.

The Complaint, on its face, fails to establish standing. Plaintiff's case is about Willow allegedly sharing her PII and PHI. But nowhere does she identify what PII and PHI she *actually* transmitted to Willow, which of that information Willow—through purported "Tracking Technology"—shared with third parties, or whether the Tracking Technology was even configured

to do what she claims it did.

Further, even if Plaintiff had standing, the Complaint still fails to state a claim for any of her *ten* causes of action. Plaintiff consented to the purported Tracking Technology of which she complains. That defeats her privacy-related claims. So too does her failure to identify what PII and PHI she purportedly transmitted to Willow. There is no way to determine if she has—or ever had—a *protected* privacy interest in anything she purportedly transmitted on startwillow.com.

Her claims also fail on a host of other substantive and procedural grounds, including the following: her CCPA claims do not provide a right of action, only apply in situations involving data breaches (which she fails to allege), and/or require a pre-suit notice, which has not happened; she prays for only monetary damages in connection with her invasion of privacy claim, which the law does not permit; her unjust enrichment claim cannot stand because she alleges that a valid contract exists between her and Willow; and her breach of contract claim is at odds with itself—it does not allege breach, and her misstatement of the Privacy Policy does not fix that.

No matter how this case is dissected, it does not add up—factually or legally. The Court should grant this motion, dismiss this case *without* leave to amend, and put a stop to this baseless-case-after-baseless-case harassment.[1]

## II. STATEMENT OF FACTS

### A. Plaintiff's Allegations

#### 1. Plaintiff claims she accessed Willow's website.

Plaintiff alleges she accessed Willow's website, startwillow.com, in "December 2024 and afterward." Compl. ¶ 123. She alleges she took a quiz on the site where she entered information concerning "her weight, weight loss goals, eligibility for GLP-1 prescriptions, and selection of prescription." *Id.* ¶ 124. Plaintiff does not, however, identify what information she actually provided or how she answered any questions. Plaintiff says she purchased a GLP-1 prescription from Willow. *Id.*

[1] As the Notice notes, *see supra* at 3, this motion follows a conference of counsel on August 28, 2026. Lombardo Decl., ¶ 6. The parties were unable to come to an agreement that would have obviated the filing of this motion. *Id.*

**2. <u>Plaintiff claims that her information was intercepted by purported Tracking Technology.</u>**

Plaintiff alleges information she transmitted on startwillow.com was intercepted, collected, and shared by purported "Tracking Technology," which she defines as the "Pinterest Pixel, Taboola Pixel, TikTok Pixel, and Microsoft's tracking products, among other third party tracking technology." Compl. ¶¶ 41, 126. Plaintiff alleges this Tracking Technology tracks and captures user actions and sends user data to third parties, like Pinterest and TikTok. *Id*. ¶¶ 47, 55, 59, 61, 69–72, 81, 82, 88, 94, 100, 101, 111, 112.

Plaintiff concedes, however, that the Tracking Technology requires installation and configuration by the website owner and that it can be modified or customized. *Id.* ¶¶ 47, 51, 54, 68, 70, 79, 95. At the same time she concedes that, Plaintiff fails to allege how the purported Tracking Technology was, at the time she allegedly visited Willow in December 2024, configured so as to track, capture, and/or share her data. Plaintiff also fails to allege which of her information this purported Tracking Technology may have tracked, captured, and/or shared.

Plaintiff, instead, relies on screenshots of what appears to be code associated with startwillow.com. *Id*. ¶¶ 112, 115. Plaintiff fails to specify when this code was generated, the version of startwillow.com with which it may be associated, to what specific web pages it corresponds, or from whose browser or what browser the screenshots originate. But even if the Tracking Technology generated this code, Plaintiff fails to allege whether the former had the same configuration as it did in December 2024.

**3. <u>Plaintiff's Alleged Injuries</u>**

Plaintiff claims that "[her] privacy rights were violated, and [she] suffered harm in the form of receiving unwanted targeted advertisements related to her use of GLP-1 products, loss of control over her private health data, increased anxiety due to unknown parties accessing sensitive data, loss of the benefit of the bargain in keeping or exchanging her private data, and other harms related to the undisclosed and non-consenting transmission of PHI and PII." Compl. ¶ 132.

/ / /

/ / /

#### 4. Plaintiff's Claims

Plaintiff has, based on the above allegations, brought the following claims against Willow, both on her behalf and that of a putative class: violations of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510 (Claim 1); violations of the California Invasion of Privacy Act ("CIPA"), Cal. Pen. Code §§ 631, 632 (Claims 2–3); violations of the Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code §§ 56.06, 56.10, 56.101, 56.36 (Claim 4); violations of the California Consumer Privacy Act ("CCPA"), Cal. Civ. Code §§ 1798.100(a)–(c), § 1798.150(a)(1) (Claims 5–7); Breach of Contract (Claim 8); Unjust Enrichment Claim (9); and Invasion of Privacy (Claim 10).

### B. Reality

#### 1. Plaintiff consented to Willow's Terms and Conditions and Privacy Policy.

Plaintiff, in accessing startwillow.com and then purchasing GLP-1s therefrom, consented to Willow's Terms and Conditions and Privacy Policy. Compl. ¶ 126; *see also id.* ¶ 249. As the Green Declaration confirms, once the user clicks on "START MY FREE VISIT" they are required to confirm that they consent to both Willow's Terms and Conditions and Privacy Policy. Green Decl. ¶ 8. If they do not consent to both, they may not, by the website's design, advance to the onboarding process. *Id.*

Moreover, as the Terms and Conditions themselves make clear, "Your access to and your use of the Services are conditioned on your acceptance of and compliance with the terms of this Agreement. By accessing or using the Services, you agree to be bound by the Agreement." Green Decl., Ex. A, at 2; *see also id.* ¶¶ 9–10. Under Willow's Terms and Conditions, "You agree that you may only bring claims against Willow Health Services related to your use of the Services on an individual basis and not as a plaintiff or class member in any purported class or representative action or proceeding." *Id.*, Ex. A, at 9.

The Privacy Policy also confirms: "BY VISITING OR USING THE SERVICES, YOU EXPRESSLY CONSENT TO THE PROCESSING OF YOUR PERSONAL INFORMATION ACCORDING TO THIS PRIVACY POLICY. IF YOU DO NOT AGREE WITH OUR

POLICIES AND PRACTICES, YOUR CHOICE IS TO NOT USE THE SERVICES." *Id.*, Ex. B, at 2. The Privacy Policy states that Willow shares customer data. It provides:

- "In order to provide you with access to the Services, certain third parties that perform services for Willow Health Services, such as hosting, analytical, data management or other similar services or are otherwise acting on our behalf . . . may have access to your personal information, including your Health Information."

- "We may share the information you provide Willow Health Services, including your personal information and Health Information with the medical professionals and pharmacies that provide services to you to enable them to continue providing services to you via the Services."

- "We may disclose non-personally identifiable aggregated information about our users without restriction."

- "Advertising Cookies and Similar Technologies. These cookies or similar technologies may be used to deliver advertisements that are more relevant to you and your interests. They may also be used to limit the times you see an advertisement as well as help to measure the effectiveness of the advertising campaign. These cookies may track your visits to other websites. Without these cookies or other technologies, online advertisements you encounter will be less relevant to you and your interests. Setting your cookie preference."

- "Our Sites also may contain electronic images known as web beacons – sometimes called single-pixel gifs – that allow us to count the number of users who have visited specific pages."

  "We use different analytic tools which serve the purpose of measuring, analyzing and optimizing our marketing measures and provide you with customized advertisements that could be of particular interest to you. In particular, we use the following tools:

  "Google Analytics uses cookies which enable an analysis of your use of the Sites. The information collected (IP address, browsing activities and other data linked to your usage of the Sites) is usually transferred to a Google server in the USA and stored there . . .

  "Facebook Pixels allow user behavior to be tracked after they have been redirected to our website by clicking on a Facebook ad. This enables us to measure the effectiveness of Facebook ads for statistical and market research purposes. Facebook may link [t]his information in your Facebook account and use it for its own promotional purposes.

  "Mixpanel analyzes customer-driven event data and creates funnel reports so we can better understand how our users interact with the Services.

  "Segment collects user events from the Services and provides a data toolkit to allow us to use the data more efficiently."

*Id.*, Ex. B, at 4–7 (some citations modified).

/ / /

## III. LEGAL STANDARD

### A. Fed. R. Civ. P. 12(b)(1)

"[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under [Rule] 12(b)(1)." *Maya v. Centex Corp*., 658 F.3d 1060, 1067 (9th Cir. 2011). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

### B. Fed. R. Civ. P. 12(b)(6)

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (citation modified) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). That means more than "the sheer possibility or conceivability" that the defendant is liable. *Id*. The plaintiff *must* plead enough "factual content" so that the court can "draw the reasonable inference that the defendant is liable." *Id.* (citation modified) (quoting *Iqbal*, 556 U.S. at 678). Moreover, "unwarranted inferences are insufficient" to defeat a motion to dismiss," *Caviness v. Horizon Cmty., Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010), and a court may "reject, as implausible, allegations too speculative to warrant further factual development," *Clinton v. Select Portfolio Servicing, Inc.*, 225 F. Supp. 3d 1168, 1172 (E.D. Cal. 2016) (citation modified).

### C. Fed. R. Civ. P. 12(f)

"Pursuant to Rule 12(f), a party may move to strike from a pleading any insufficient defense or any redundant, immaterial, or impertinent and scandalous matter." *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 989–90 (N.D. Cal. 2009) (citation modified). And "[w]here the complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant may move to strike class allegations prior to discovery." *Id*. at 990. Class-action allegations may be struck at the pleadings stage, where the court is "convinced that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed." *Id*.

/ / /

## IV. THE COURT SHOULD DISMISS THE COMPLAINT UNDER RULE 12(B)(1) BECAUSE PLAINTIFF LACKS ARTICLE III STANDING.

### A. The Complaint Does Not, on Its Face, Allege Standing.

The Complaint does not demonstrate standing because it fails to allege what sensitive information Plaintiff purportedly transmitted to Willow or which of that information Willow purportedly shared with third parties. "[T]o survive a motion to dismiss, a plaintiff must identify the specific personal information she disclosed that implicates a protectable privacy interest." *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) (citation modified) *overruled on other grounds by Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025); *see also Straubmuller v. Jetblue Airways Corp.*, No. CV DKC 23-384, 2023 WL 5671615, at *4 n.4 (D. Md. Sept. 1, 2023) ("[C]ourts have found that violations tantamount to a substantive privacy injury require disclosure of specific personal information."); *Byars v. Sterling Jewelers, Inc.*, No. 5:22-cv-01456-SB-SP, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023) (finding no harm to privacy where "Plaintiff [did] not allege that she disclosed any sensitive information to Defendant, much less identify any specific personal information she disclosed that implicates a protectable privacy interest.")

*Mikulsky* is instructive. There, the plaintiff sued Noom, which, like Willow, "is a digital health and wellness platform that focuses on helping individuals lose weight and lead healthier lives." *Mikulsky*, 682 F. Supp. 3d at 860. Noom, it was alleged, "procures and embeds various Session Reply Code—from third party Session Reply Providers, including FullStory—on [Noom's] website to track and analyze website user interactions with the Website." The Code, in particular, "enables website operators to record, save, and replay, a website visitor's interactions with a given website, including mouse movements, clicks, keystrokes (such as text being entered into an information field or text box, URLs of webpages visited, and/or other electronic communications in real-time." The plaintiff visited Noom's website to browse its products, and she "used her mouse to hover and click on certain products and services and typed her personal information into text fields." The plaintiff filed a class action lawsuit against Noom, alleging a CIPA claim, among others. *Id.* (citations modified).

Noom moved to dismiss, arguing that the plaintiff did not allege an injury in fact—particularly that she did not specifically allege what personal information she transmitted on Noom's website. *Id*. at 862. The court agreed. *Id*. at 863–865. "Plaintiff's conclusory allegation that she disclosed 'personal information' does not allow the Court to determine whether Plaintiff has a protectable privacy interest in that information." *Id.* at 864. "Without more, the Court is unable to determine whether the 'personal information' Plaintiff inputted is protected or whether it was merely information akin to basic contact information that would not trigger a protectable privacy interest." *Id*. The Court dismissed the case. *Id*. at 865.

This Complaint is just as defective. *First*, it fails to allege that any purported Tracking Technology, in fact, captured any identifying information that would allow anyone to link Plaintiff's name, for example, with any private information she may have entered on startwillow.com. The Complaint, instead, notes that the technology *may* assign a user identifier to the consumer. Compl. ¶ 111 ("The Taboola Pixel simultaneously transmits a unique user identifier that enables Taboola to track the user across its network of over 9,000 publisher websites"), ¶ 112 ("The Pinterest Pixel captures and transmits to Pinterest each specific URL the user visits as she progresses through the onboarding process, along with the user's personally identifiable Pinterest user identifier (the 'TID' parameter . . ."). But a unique user identifier—i.e., a series of numbers or characters—does not disclose the *personal* identity of the user, be it of Plaintiff or anyone.

*Second*, the Complaint alleges that the purported Tracking Technology *only* captures sensitive information when it is configured to do so. *Id.* ¶¶ 59, 66, 68, 70, 79–80, 95. But it is immaterial whether the technology *can* do something; what it actually *did* is what counts. *See Straubmiller*, 2023 WL 5671615, at *4 ("Because the Complaint says nothing about . . . the specific kinds of captured personal information implicating a substantive privacy interest, Plaintiff has not alleged that his personal information was intercepted and recorded by Defendant.") (citation modified). The Complaint is silent on whether any purported tracking technology on startwillow.com was specifically configured to capture such information, *see* Compl. ¶¶ 59, 66, 68, 79, 94, 95, and it fails to plead any plausible basis that it did so *vis-à-vis* Plaintiff, instead

maintaining—in a wholly conclusory fashion—that her information was "intercepted by the Tracking Technologies," *id.* ¶ 126. Indeed, the Complaint alleges that the "TikTok Advanced Matching pixel is also set up to capture user text inputs and activity," *id.* ¶ 115, but, as the Complaint concedes, the Advanced Matching pixel is only effective if the user has an active TikTok account, *id.* ¶ 71. Nowhere in the Complaint is it alleged that Plaintiff has a TikTok or any other social media account.

*Third*, even if the purported Tracking Technology did intercept information that would enable it to identify the user as Plaintiff, the Complaint still fails to allege what information Plaintiff purportedly transmitted to Willow. The Complaint alleges that "Plaintiff Wilce's PHI and PII, including her weight, weight loss goals, eligibility for GLP-1 prescriptions, and selection of prescription, were intercepted by the Tracking Technologies." Compl. ¶ 126. But Plaintiff's allegation that she disclosed 'personal information' does not allow the Court to determine whether Plaintiff, in fact, has a protectable privacy interest in what she purportedly shared with Willow. *See Mikulsky*, 682 F. Supp. 3d at 860.[2] Instead, the Complaint leaves the Court guessing as to what Plaintiff *might* have entered on startwillow.com, much less what Plaintiff might have truthfully entered. Standing cannot be achieved through speculation. The Court should grant the Motion.

## V. <u>THE COURT SHOULD DISMISS THE COMPLAINT UNDER RULE 12(B)(6) BECAUSE PLAINTIFF DOES NOT STATE A CLAIM.</u>

### A. <u>Plaintiff fails to state a claim under ECPA and CIPA (Claims 1–3)</u>

Plaintiff fails to state a claim under ECPA and CIPA (Cal. Pen. Code §§ 631, 632) (Claims 1–3) because she consented to the purported Tracking Technology. Plaintiff fails to state a claim under ECPA and Pen. Code § 631 (Claims 1–2) because she does not sufficiently allege that any of her purported information was protected "content." And she does not state a claim

/ / /

---

[2] Plaintiff may claim that information relating to her weight is sufficiently private. It is not. *Best v. Berard*, 837 F. Supp. 2d 933, 938 (N.D. Ill. 2011) ("[I]nformation disclosing one's height and weight is not protected under a constitutional privacy right.").

under Pen. Code § 632 (Claim 3) because that statute, by its plain text, only applies to third-party eavesdroppers, not parties to communications.

**1. <u>Claims 1–3: Plaintiff consented to the purported Tracking Technology.</u>**

Plaintiff, in purportedly accessing, using, and purchasing products from startwillow.com, consented to Willow's Privacy Policy, under which she agreed to "Advertising Cookies and Similar Technologies," as well as pixel technology. Green Decl., Ex. B, at 6. Consent is a complete defense to both ECPA and CIPA. *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act.") (citation modified). "Consent can be explicit or implied, but any consent must be actual." *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1055 (N.D. Cal. 2025) (citation modified). "Consent is only effective if the person alleging harm consented to the particular conduct, or to *substantially the same conduct* and if the alleged tortfeasor did not exceed the scope of that consent." *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024) (citation modified).

*Lakes* is on point. There, plaintiffs sued Ubisoft for allegedly disclosing consumer PII to Facebook through the use of tracking technology on its website. *Lakes*, 777 F. Supp. 3d at 1051–052. The court dismissed all claims, including those under ECPA and CIPA, because the plaintiffs had consented to the terms of Ubisoft's privacy policy, which provided that Ubisoft may use cookies and pixels to share consumer activity with third parties. *Id*. at 1055–57. The court rejected the argument that "it is not enough for Defendant to inform users that it will collect their information and share it with third parties[, and that] Defendant must establish that its terms and notices 'explicitly notified' Plaintiffs of Defendant's specific practice of exposing Plaintiffs' PII—consisting of video game titles combined with unique Facebook identifiers—to interception by Meta." *Id*. at 1055–056. The court also dismissed the argument that plaintiffs did not provide actual consent because "the disclosures state that Defendant will collect data and share it with third parties—not that Meta itself will collect it through the Pixel." *Id*. A "highly granular disclosure for the Pixel" was not, the court held, required for purposes of establishing consent, as "a reasonable user would understand from the Privacy Policy that he or she is consenting to the use of cookies including by third parties." *Id*. at 1056–57.

So too here. Willow's Privacy Policy—to which Plaintiff consented, Green Decl., Ex. B; *see also id.* ¶¶ 9–10; Compl. ¶ 249 (alleging that the Privacy Policy is a binding agreement between Willow and Plaintiff)—confirms that its website contains cookies, pixels, and "similar" technologies. Plaintiff thus had notice that the purported Tracking Technologies may have been active when she purportedly accessed startwillow.com. To the extent Plaintiff complains that the Privacy Policy does not specifically mention Pinterest, Taboola, TikTok, and/or Microsoft, *Lakes* makes clear that such a "granular" Privacy Policy is not necessary. *See* 777 F. Supp. 3d at 1055–57 (holding it was immaterial, for purposes of consent, whether Meta was specifically mentioned in Ubisoft's privacy policy).

What's more, so long as Plaintiff is on notice of the technology noted in the Privacy Policy (cookies, Facebook Pixel, Mixpanel, Segment, and "similar technologies") and consents to same, she also consents to "substantially the same [technology]," like that from Pinterest, Taboola, TikTok, or Microsoft. *See Calhoun*, 113 F.4th at 1147. And the Complaint confirms that they are all "substantially the same," at least insofar as their interplay with consumer data is concerned—Plaintiff alleges that they all track, collect and share user information. *See id.*; *see also* Compl. ¶¶ 40–101. Plaintiff thus cannot complain that her privacy was violated, as the Privacy Policy makes it clear that third parties may interact and collect her information in a variety of ways and using a variety of methods. Her consent defeats her ECPA and CIPA claims.[3]

**2. <u>Claims 1–2: Plaintiff fails to sufficiently allege that her personal information was protected "content."</u>**

Plaintiff fails to allege that her personal information was protected "content." "The Ninth Circuit has held that the contents of an online communication under federal wiretap law refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (addressing CIPA

[3] It also dooms all of Plaintiff's privacy-related claims, which should be dismissed. *See Lakes*, 777 F. Supp. 3d at 1058.

claim) (citation modified). Usernames, passwords, geographic location information, names of email senders, email addresses, phone numbers, IP addresses, and URLs are thus not "content." *Id.* (collecting cases). Nor, as *Yoon* held, are keystrokes, mouse clicks, pages viewed, shipping and billing information, dates and times of web page visits, durations of those visits, the location of the user/s at the time of those visits, browser type, and operating system types. *Id.* at 1082–83. Thus, content only consists of "the internal, user-generated material of a message, not routine identifiers, whether automatically generated or not." *Id.* at 1082.

As liability turns on whether certain information counts as "content" or not, in order to state a claim under ECPA and CIPA, one must identify what information is at issue. But Plaintiff does not. And the graphics that Plaintiff includes in her Complaint that purportedly depict the quiz that she claims to have taken confirm the majority of the questions required the user to select a pre-written answer by clicking the corresponding box, as opposed to filling in a custom text response. Compl. ¶¶ 105, 107.[4] That is not content. *See Yoon*, 549 F. Supp. 3d at 1082–83.

### 3. **<u>Claim 3: Pen. Code § 632 does not apply to the parties to a communication, which Plaintiff alleges Willow to have been.</u>**

Plaintiff fails to state a claim under Cal. Pen. Code § 632 because eavesdropping refers to a third party listening to a conversation between two *other* parties. Section 632(a) provides:

> A person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio, shall be punished.

A "person," is "an individual," other than one "known by all parties to a confidential communication to be overhearing or recording the communication." *Id.* § 632(b).

Plaintiff knowingly communicated with Willow, and Willow cannot eavesdrop on its own conversation. *Turner v. Nuance Commc'ns, Inc.*, 735 F. Supp. 3d 1169, 1182 (N.D. Cal. 2024).

[4] These graphics are, tellingly, identical to those in the *Jacobson* Complaint—which, of course, was dismissed, at least in part, because Jacobson never took the quiz. *Compare* Compl. ¶¶ 105, 107 *with* Lombardo, Decl.., Ex. A., ¶¶ 104, 10. This undermines the notion that the graphics, this time around, somehow pertain to any quiz Wilce took—or any information she may have entered thereon.

**B. <u>Plaintiff fails to state a claim under the CMIA (Claim 4).</u>**

This claim is legally meritless. The "CMIA prohibits the unauthorized disclosure of medical information and the negligent maintenance or preservation of medical information." *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1128 (S.D. Cal. 2023). To state a claim, the plaintiff must, in addition to alleging that a defendant disclosed "medical information" that was "individually identifiable," allege that this information was "improperly viewed or otherwise accessed." *Id.* "[J]ust because medical information has been disclosed in an unauthorized manner does not mean that the information was viewed by an unauthorized person." *Id.*

Here, Plaintiff fails to specify what information she purportedly entered on startwillow.com. That is fatal to this claim, as it was in *Wilson v. Rater8, LLC*, No. 20-cv-1515-DMS-LL, 2021 WL 4865930, at *5 (S.D. Cal. Oct. 18, 2021), in which the court dismissed a CMIA claim where "the FAC [did] not contain specific allegations about what information the CMIA Defendants disclosed to rater8 beyond Plaintiff's contact information and appointment date." Plaintiff may claim the quiz she took asked for information like what medications Plaintiff was on, whether she had any medical conditions, or whether she was pregnant or lactating. Compl. ¶ 107. While these questions do allow the respondent to enter sensitive information, he/she may also answer to "no" to these questions, refuse to enter sensitive information in text boxes, or provide full responses that are not true. Plaintiff cannot claim that no's, empty (or incomplete) text boxes, and false responses are medical information. And Plaintiff's failure to specify her purported answers prevent the Court from determining whether they constitute medical information that is individually identifiable. (Nor is this a technical pleading deficiency where evidence shows Plaintiff did not actually enter any information; at minimum, Plaintiff *must* explain in a pleading what it is she claims to have submitted.)

Plaintiff also fails to adequately plead the information she purportedly entered on startwillow.com was "improperly viewed or otherwise accessed." *Cousin*, 681 F. Supp. 3d at 1128. Nowhere does the Complaint allege that anyone *actually* viewed any of the purported information she entered on startwillow.com. It, instead, alleges that "Plaintiff's privacy rights were violated, and Plaintiff suffered harm in the form of receiving unwanted targeted

advertisements . . ." Compl. ¶ 132. But there are no allegations that establish that she received any targeted advertisements *because of* her purported activity on startwillow.com.

**C. Plaintiff fails to state a claim under the CCPA (Claims 5–7).**

Plaintiff's claims under CCPA are legally barred. Cal. Civ. Code § 1798.100(a)–(c), under which Plaintiff brings Claims 5 and 6, do not confer a private right of action. *Delgado v. Meta Platforms, Inc.*, 718 F. Supp. 3d 1146, 1155 (N.D. Cal. 2024) ("The CCPA . . . calls for enforcement by the California Attorney General, allowing a private right of action only in the event of a security breach.") (citing Cal. Civ. Code § 1798.150). These claims must be dismissed.

Plaintiff's claim under § 1798.150 (Claim 7) is legally barred. Section 1798.150(b) provides that "[a]ctions pursuant to this section may be brought by a consumer *if*, prior to initiating any action against a business for statutory damages on an individual or class-wide basis, a consumer provides a business 30 days' written notice identifying the specific provisions of this title the consumer alleges have been or are being violated." (emphasis added.) Plaintiff did not do this—nor alleges that she did. This claim is barred. Regardless, section 1798.150 only applies in the event of a data breach, which Plaintiff does not allege here. *Id.* § 1798.150(a)(1).[5]

**D. Plaintiff fails to state a claim for breach of contract (Claim 8)**

Plaintiff fails to sufficiently allege breach. Though she claims Willow, in violation of its Privacy Policy, sells and rents personal information of users to third parties, she neither specifies what personal information she purportedly provided Willow or any that Willow sold or rented to third parties. Instead, she claims Willow "[s]har[ed] [her] user data with third parties." Compl. ¶ 255. But sharing and selling are not the same thing. (And, in any event, the Privacy Policy expressly allows for the sharing of consumer data. *See, e.g.,* Green Decl., Ex. B, at 4 ("In order to

---

[5] Some courts, counter to the plain text of the statute, do allow such claims "to survive a motion to dismiss in cases where the plaintiff does not allege a data breach, but instead where the defendants disclosed plaintiff's personal information without his consent due to the business's failure to maintain reasonable security practices." *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1048–49 (N.D. Cal. 2025) (citation modified). But this exception does not apply here, as there are no allegations as to how Plaintiff purportedly answered any questions on startwillow.com. Plaintiff's failure to specify her purported answers prevents the Court from determining whether they constitute protected information under the CCPA. Plaintiff thus fails to state a claim under § 1798.150—even under *Shah*.

provide you with access to the Services, certain third parties that perform services for Willow Health Services, such as hosting, analytical, data management or other similar services or are otherwise acting on our behalf . . . may have access to your personal information, including your Health Information.")). Regardless, Plaintiff fails to allege any *actual* sales or profits on the part of Willow or identify any *actual* consideration it may have received from a third party. This theory of breach is a non-starter.

Plaintiff also misstates Willow's Privacy Policy when asserting that Willow transmitted "users' PHI to advertising and analytics platforms for marketing purposes without obtaining the 'explicit authorization promised in the Privacy Policy.'" Compl. ¶ 255. The Privacy Policy actually states that Willow "respects the right of patients to opt-out of marketing communications, ensuring that explicit authorization is obtained before using PHI for marketing purposes." Green Decl., Ex. B, at 10. This provision, contrary to what Plaintiff tries to make it seem, relies on an opt-out, not opt-in, consent framework, which is in line with the law. Cal. Civ. Code § 1798.120(a)(1) ("A consumer shall have the right, at any time, to direct a business that sells or shares personal information about the consumer to third parties not to sell or share the consumer's personal information.") (citation modified). So, even if Plaintiff did not specifically permit—via opt-in—that her information be used for marketing purposes, that is immaterial. That, combined with the fact that Plaintiff fails to allege that she ever opted-out, dooms this theory of breach. Plaintiff fails to state a claim for breach of contract. The Court should grant the Motion.

**E. <u>Plaintiff fails to state a claim for unjust enrichment (Claim 9).</u>**

Plaintiff's claim for unjust enrichment is legally meritless and at odds with her own pleading. "[I]n California, there is not a standalone cause of action for unjust enrichment, which is synonymous with restitution. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (citation modified). "When a plaintiff alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution." *Id.* (citation modified). But "an action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter." *Lance Camper Mfg. Corp. v. Republic Indem. Co.*, 51 Cal. Rptr. 2d 622, 628 (Ct. App. 1996); *accord Vaughan v. Quicken*

*Loans Inc.*, No. 2:25-cv-04020-MWC-AGR, 2025 WL 2104273, at *6 (C.D. Cal. July 8, 2025) (recognizing same at pleadings stage). That is a problem for Plaintiff, as she alleges that there *was* an enforceable contract between her and Willow—the Privacy Policy. Compl. ¶ 249. And Plaintiff cannot claim that the Policy does not cover the "same subject matter" as her unjust enrichment claim, as her overarching theory of liability is that Willow allegedly violated it in its alleged use of "Tracking Technologies." Compl. at *passim*. This claim should be dismissed.

### F. <u>Plaintiff fails to state a claim for invasion of privacy (Claim 10).</u>

This claim is barred. Plaintiff prays only for monetary damages in connection with this claim, Compl. at 57–58, which the law does not support, *Cousin*, 681 F. Supp. 3d at 1127 ("California's constitutional provision protecting the right of privacy . . . does not confer on a litigant a private right of action for damages.") (internal quotations removed) (ellipses in original). Dismissal is required, as a matter of law. *Id.*; *see also Moore v. Rodriguez*, No. 20-cv-01481-BAS-BGS, 2021 WL 2222590, at *20 (S.D. Cal. June 2, 2021) (granting motion to dismiss on this basis). But even if the Court found that damages could be awarded, the claim still fails, as Plaintiff has not shown that she possessed a legally protected privacy interest in whatever information she purportedly transmitted to startwillow.com.

## VI. <u>THE COURT SHOULD STRIKE THE CLASS-ACTION ALLEGATION UNDER RULE 12(F) DUE TO WAIVER.</u>

The Court should strike the class-action allegation in this case because Plaintiff entered into a class-action waiver. Willow's Terms and Conditions provide, in relevant part: "You agree that you may only bring claims against Willow Health Services related to your use of the Services on an individual basis and not as a plaintiff or class member in any purported class or representative action or proceeding."[6] Green Decl., Ex. A, at 9.

Contrary to what Plaintiff has stated she would argue, this waiver is not unconscionable. "[A] contract provision is unenforceable due to unconscionability only if it is both procedurally

---

[6] As noted, Plaintiff is also barred from pursuing a class action under the CCPA due to her failure to serve Willow with a pre-suit notice. Cal. Civ. Code § 1798.150.

and substantively unconscionable." *Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 981 (9th Cir. 2007). "Although class action waivers are not categorically unconscionable in California, enforcement may be denied when they are 'found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money.'" *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 577–78 (N.D. Cal. 2025) (quoting *Discover Bank v. Super. Ct.*, 113 P.3d 1100, 1110 (Cal. 2005)). An amount of $16,000 "is not so small that individuals would not be willing to spend the time and effort to pursue an individual claim for the amount, particularly when the prospect of an award of statutory attorney fees is also possible." *Arguelles-Romero v. Superior Ct.*, 109 Cal. Rptr. 3d 289, 306 (2010), *as modified* (Ct. App. May 20, 2010). Courts may also find a waiver improper when it is "buried" or not "visually highlighted or differentiated in any way." *Frasco*, 349 F.R.D. at 578.

Willow's class-action waiver is not unconscionable. *First*, Plaintiff seeks a large amount of statutory damages—which, on a per violation metric, sum to $21,750. *See Arguelles-Romero*, 109 Cal. Rptr. 3d at 306 ($16,000 suffices). Plaintiff, on top of that, seeks compensatory and punitive damages, as well as attorney's fees.

*Second*, the class-action waiver was not "buried" in Willow's Terms and Conditions. Willow breaks down its terms through the use of headers and sub-headers. *See* Green Decl., Ex. A, at *passim*. The class-action waiver was placed under the sub-header of "Controlling Law and Jurisdiction," thereby tipping off the consumer that the Terms and Conditions imposed legal limitations. *Id.*, Ex. A, at 9. The waiver was, moreover, not couched at the end; indeed, multiple sections followed it. *See id.*, Ex. A, at 9–13.

*Third*, the bargaining environment was not one of gun-to-your-head, take-it-or-leave-it. Unlike some markets, like telecommunications or utilities, where the consumer may only have one or two options, the GLP-1 market is saturated with competitors (and has been). If Plaintiff did not like Willow's terms, she could have gone elsewhere: in addition to seeking a prescription from her physician, she could have also consulted other GLP-1 businesses, like Ro, Noom, Hims/Hers,

and Mochi.

*Fourth*, Plaintiff concedes that she is bound to the Privacy Policy, which, like Willow's Terms and Conditions, is found on startwillow.com. How then, as a matter of logic, could the latter be procedurally unconscionable while the former is not? Plaintiff's class action allegation is legally improper. It should be stricken.

## VII. THE COURT SHOULD DISMISS THE COMPLAINT WITHOUT LEAVE TO AMEND.

The Court should grant this Motion without leave to amend because amendment would be futile. *Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983) ("[F]utile amendments should not be permitted."). Plaintiff cannot overcome the fact that (i) she never accessed startwillow.com, (ii) that she consented to the purported Tracking Technology, or (iii) that Claims 5–7, and 8 are barred, as a matter of law. *See, e.g., Lakes*, 777 F. Supp. 3d at 1060 (denying leave to amend, as "Plaintiffs cannot amend their complaint to overcome the issue of consent.").

## VIII. CONCLUSION

As the foregoing makes clear, the Court should grant this Motion under Rules 12(b)(1), (b)(6), and (f) without leave to amend.

DATED: August 28, 2026

ELLIS GEORGE LLP
Keith J. Wesley
Anthony T. Lombardo

By: */s/Keith J. Wesley*
Keith J. Wesley
Attorneys for Defendant
Willow Health Services, Inc.

# PROOF OF SERVICE

**Kristy Wilce v. Willow Health Services, Inc.**
**Case No. 2:26-cv-02465-DAD-AC**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 2121 Avenue of the Stars, 30th Floor, Los Angeles, CA 90067.

On August 28, 2026, I served true copies of the following document(s) described as **DEFENDANT WILLOW HEALTH SERVICES, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1), (B)(2), (F); MEMORANDUM OF POINTS AND AUTHORITIES** on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on August 28, 2026, at Los Angeles, California.

Diane Torosyan

**SERVICE LIST**
**Kristy Wilce v. Willow Health Services, Inc.**
**Case No. 2:26-cv-02465-DAD-AC**

Victor J. Sandoval
Almeida Law Group LLC
3415 South Sepulveda Blvd., Suite 1121
Los Angeles, California 90034
Telephone: 559.760.6662
Email: victor@almeidalawgroup.com

*Attorneys for Plaintiff*