**ALMEIDA LAW GROUP LLC**
Victor J. Sandoval (SBN 344461)
3415 S. Sepulveda Blvd. Suite 1121
Los Angeles, California 90034
(562) 534-5907
victor@almeidalawgroup.com

*Attorneys for Plaintiff & the Putative Classes*

[*Additional Counsel on Signature Page*]

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**SACRAMENTO DIVISION**

KRISTY WILCE,

Plaintiff,

vs.

WILLOW HEALTH SERVICES, INC.,

Defendant.

Case No. 2:26-cv-02465-DAD-AC

Hon. Dale A. Drozd
Magistrate Allison Claire

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE CLASS ACTION COMPLAINT AND TO STRIKE CLASS ALLEGATIONS**

Date: October 19, 2026
Time: 1:30 p.m.
Place: Courtroom 4 (via Zoom)
Complaint Filed: July 15, 2026
Trial Date: None Set

**TABLE OF CONTENTS**


INTRODUCTION ..... 1

FACTUAL BACKGROUND ..... 3

LEGAL STANDARDS ..... 4

ARGUMENT ..... 5

- I. The Court Should Disregard Willow's Extrinsic Evidence, Which Is Improperly Submitted and, In Any Event, Insufficient. ..... 5
  - A. Willow cannot declare a facial attack and then submit misleading extrinsic evidence. ..... 5
  - B. Extrinsic evidence cannot be used on Willow's Rule 12 arguments. ..... 5
    - 1. Willow filed no request for judicial notice and the documents attached to and included within the declarations are not judicially noticeable. ..... 6
    - 2. The Terms and Conditions and the other documents attached to the declarations are not incorporated by reference. ..... 6
  - C. If considered, the Green Declaration does not support Willow's arguments. ..... 7
- II. Plaintiff Has Article III Standing. ..... 8
  - A. The Complaint identifies specific, sensitive, identifiable medical information. ..... 8
  - B. Mikulsky is materially distinguishable. ..... 9
  - C. Willow's remaining standing arguments fail. ..... 10
- III. Willow Has Not Met its Burden on Prior or Actual Consent. ..... 11
- IV. ECPA and CIPA § 631—URLs, Button Clicks, and Form Entries are Contents. ..... 13
- V. CIPA § 632—Non-consensual Recording and Aiding Eavesdropping. ..... 14
- VI. CMIA—Plaintiff Specifies What Information was Entered and Viewing or Access is not Required. ..... 15
- VII. CCPA—Plaintiff Served the Notice and 1798.150 applies to 1798.100. ..... 17
  - A. Plaintiff served the statutory notice, and pleaded that she did. ..... 17
  - B. Section 1798.150's private right of action applies to section 1798.100. ..... 18
- VIII. Breach of Contract—Willow Did Not Obtain Explicit Authorization and Sold User Data. 19
- IX. Unjust Enrichment—Pled in the Alternative and Covering Differing Subjects. ..... 21
- X. Invasion of Privacy—Plaintiff Seeks More Than Damages, Which Are Also Permissible. 22
- XI. The Class Allegations Should Not Be Stricken. ..... 23
  - A. A motion to strike class allegations is disfavored and premature. ..... 23
  - B. The waiver is found in a document that may not be considered here. ..... 23
  - C. This case is outside the scope of the waiver. ..... 24
  - D. The waiver is unconscionable, and Willow's own authority shows why. ..... 24

CONCLUSION ..... 25

# TABLE OF AUTHORIES

*Allison v. PHH Mortg.*,
2026 WL 1353827 (N.D. Cal. May 14, 2026) .......... 18
*Arguelles-Romero v. Superior Court*,
184 Cal. App. 4th 825 (2010) .......... 25
*Armendariz v. Found. Health Psych. Servs.*,
24 Cal. 4th 83 (2000) .......... 25
*Arnold & Assocs., Inc. v. Misys Healthcare Sys., a div. of Misys, PLC*,
275 F. Supp. 2d 1013 (D. Ariz. 2003) .......... 21
*Augustine v. United States*,
704 F.2d 1074 (9th Cir. 1983) .......... 5
*Best v. Berard*,
837 F. Supp. 2d 933 (N.D. Ill. 2011) .......... 10
*Brayfield v. Advanced Hair Restoration LLC*,
2026 WL 2138552 (C.D. Cal. July 24, 2026) .......... 8
*Brown v. Google LLC*,
2021 WL 6064009 (N.D. Cal. Dec. 22, 2021) .......... 20
*Calhoun v. Google LLC*,
526 F.Supp.3d 605 (N.D.Cal. 2021); 113 F.4th 1141 (9th Cir. 2024) .......... 12, 13
*Campbell v. Facebook, Inc.*,
77 F.Supp.3d 836 (N.D.Cal. 2014); 951 F.3d 1106 (9th Cir. 2020) .......... 11, 12
*Cholakyan v. Mercedes-Benz USA, LLC*,
796 F. Supp. 2d 1220 (C.D. Cal. 2011) .......... 23
*Clausing v. San Francisco Unified Sch. Dist.*,
221 Cal. App. 3d 1224 (Ct. App. 1990) .......... 22
*Congdon v. Uber Techs., Inc.*,
291 F.Supp.3d 1012 (N.D.Cal. 2018) .......... 21
*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023); 702 F. Supp. 3d 967 (S.D. Cal. 2023) .......... 17, 22
*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) .......... 11
*Delgado v. Meta Platforms, Inc.*,
718 F. Supp. 3d 1146 (N.D. Cal. 2024) .......... 18
*Discover Bank v. Superior Court*,
36 Cal. 4th 148 (2005) .......... 25
*Doe v. GoodRx Holdings, Inc.*,
2025 WL 2052302 (N.D. Cal. July 22, 2025) .......... 21
*Doe v. Regents of University of California*,
672 F. Supp. 3d 813 (N.D. Cal. 2023) .......... 14
*Doe v. Tenet Healthcare Corp.*,
789 F. Supp. 3d 814 (E.D. Cal. 2025) .......... 14
*Eisenhower Med. Ctr. v. Superior Court*,
226 Cal. App. 4th 430 (2014) .......... 15
*Frasco v. Flo Health, Inc.*,
349 F.R.D. 557 (N.D. Cal. 2025); 2022 WL 21794391 (N.D. Cal. June 6, 2022) .......... 24, 25

*Gabrielli v. Motorola Mobility LLC*,
2025 WL 2494368 (N.D. Cal. July 14, 2025) ..... 8
*Gaines v. AT&T Mobility Servs., LLC*,
424 F. Supp. 3d 1004 (S.D. Cal. 2019) ..... 4
*Gatton v. T-Mobile USA, Inc.*,
152 Cal. App. 4th 571 (2007) ..... 25
*Gilligan v. Experian Data Corp.*,
2026 WL 32259 (N.D. Cal. Jan. 6, 2026) ..... 13
*Graham v. Scissor-Tail, Inc.*,
28 Cal. 3d 807 (1981) ..... 25
*In re Ambry Genetics Data Breach Litig.*,
567 F. Supp. 3d 1130 (C.D. Cal. 2021) ..... 8
*In re Facebook Internet Tracking*,
956 F.3d 589 (9th Cir. 2020) ..... 10, 14, 22
*In re Facebook, Inc.*,
402 F.Supp.3d 767 (N.D.Cal. 2019) ..... 12, 13, 22
*In re Google, Inc.*,
2013 WL 5423918 (N.D.Cal. Sept. 26, 2013) ..... 12
*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ..... *passim*
*In re Wal-Mart Stores, Inc.*,
505 F. Supp. 2d 609 (N.D. Cal. 2007) ..... 23
*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ..... 13
*J.M. v. Illuminate Educ., Inc.*,
19 Cal. 5th 705 (2026) ..... 17
*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. May 31, 2022) ..... 11
*Johnson v. Walmart, Inc.*,
2021 WL 3269283 (E.D. Cal. July 30, 2021) ..... 24
*JustM2J LLC v. Brewer*,
2025 WL 3208815 (E.D. Cal. Nov. 17, 2025) ..... 4
*Katz-Lacabe v. Oracle Am., Inc.*,
668 F.Supp.3d 928 (N.D. Cal. 2023) ..... 8
*Kearney v. Salomon Smith Barney, Inc.*,
39 Cal. 4th 95 (2006) ..... 14
*Keith v. City of San Diego*,
2023 WL 5618941 (S.D. Cal. Aug. 30, 2023) ..... 5, 23
*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ..... *passim*
*Klein v. Chevron U.S.A., Inc.*,
202 Cal. App. 4th 1342 (2012) ..... 20
*L.B. v. LinkedIn Corp.*,
2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) ..... 10
*Lakes v. Ubisoft, Inc.*,
777 F.Supp.3d 1047 (N.D.Cal. 2025) ..... 12
*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001) ..... 1, 6, 23

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014) ............ 4, 5
*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) ............ 25
*Lynch v. Express Scripts Holding Co.*,
2025 WL 2224419 (N.D.Cal. Aug. 5, 2025) ............ 12
*M.D. v. Google LLC*,
2025 WL 2710095 (N.D. Cal. Sept. 23, 2025) ............ 12
*M.G. v. Therapymatch, Inc.,*
2024 WL 4219992 (N.D. Cal. Sept. 16, 2024) ............ 18
*Matera v. Google Inc.*,
2016 WL 5339806 (N.D. Cal. Sept. 23, 2016) ............ 11
*Melbye v. Accel. Payment Techs., Inc.,*
2012 WL 5944644 (S.D.Cal., Nov. 27, 2012) ............ 21
*Mikulsky v. Bloomingdale's LLC*,
2024 WL 3091395 (S.D. Cal. May 14, 2024); 2025 WL 1718225 (9th Cir. June 20, 2025) ..... 14
*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) ............ 9
*Moore v. Rodriguez*,
2021 WL 2222590 (S.D. Cal. June 2, 2021) ............ 21, 22
*Operating Eng'rs Loc. 3 v. Johnson*,
110 Cal. App. 4th 180 (2003) ............ 22
*Payton v. City of Santa Clara*,
132 Cal.App.3d 152 (1982) ............ 22
*Porten v. University of San Francisco*,
64 Cal.App.3d 825 (1976) ............ 22
*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ............ 21
*Rankin v. Glob. Tel*Link Corp.*,
2013 WL 3456949 (N.D. Cal. July 9, 2013) ............ 21
*Rice v. Downs,*
248 Cal. App. 4th 175 (2016) ............ 24
*Riganian v. LiveRamp Holdings Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) ............ 10
*Ronderos v. USF Reddaway, Inc.*,
114 F.4th 1080 (9th Cir. 2024) ............ 25
*Rosales v. United States*,
824 F.2d 799 (9th Cir. 1987) ............ 5
*Safe Air for Everyone v. Meyer,*
373 F.3d 1035 (9th Cir. 2004) ............ 4, 5
*Sanders v. Apple Inc.*,
672 F. Supp. 2d 978 (N.D. Cal. 2009) ............ 23
*SEC v. Sands*,
902 F. Supp. 1149 (C.D. Cal. 1995) ............ 23
*Selby v. Sovrn Holdings, Inc.*,
2025 WL 2950164 (N.D. Cal. Oct. 17, 2025) ............ 13
*Semien v. PubMatic Inc.,*
2026 WL 216333 (N.D. Cal. Jan. 27, 2026) ............ 10

*Shah v. Capital One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) .................... 18
*Shah v. MyFitnessPal, Inc.,*
824 F. Supp. 3d 906 (N.D. Cal. 2026) .................... 10
*Smith v. Rack Room Shoes, Inc.*,
2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) .................... 13, 14, 15
*Snow v. Eventbrite, Inc.*,
2020 WL 6135990 (N.D. Cal. Oct. 19, 2020) .................... 7
*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) .................... 16
*Stasi v. Inmediata Health Grp. Corp.*,
501 F. Supp. 3d 898 (S.D. Cal. 2020) .................... 18
*Strong v. LifeStance Health Grp. Inc.,*
2025 WL 317552 (D. Ariz. Jan. 28, 2025) .................... 16
*Sutter Health v. Superior Court*,
227 Cal. App. 4th 1546 (2014) .................... 16, 17
*Swenson v. File*,
3 Cal. 3d 389 (1970) .................... 19, 20
*Tomek v. Apple, Inc.*,
2013 WL 3872774 (E.D. Cal. July 25, 2013) .................... 5
*Toy v. LifeLine Screening of Am. Ltd.*,
2024 WL 1701263 (N.D. Cal. Mar. 19, 2024) .................... 8, 11
*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .................... 8
*Turner v. Nuance Commc'ns, Inc.*,
2024 WL 2750017 (N.D. Cal. May 28, 2024) .................... 143
*Ward v. Mochi Health Corp.*,
2026 WL 2584947 (N.D. Cal. Sept. 1, 2026) .................... *passim*
*White v. Davis,*
13 Cal.3d 757 (1975) .................... 22
*Wilson v. Rater8, LLC*,
2021 WL 4865930 (S.D. Cal. Oct. 18, 2021) .................... 15, 16
*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .................... 14

**Statutes**

18 U.S.C. § 2510(8) .................... 14
Cal. Bus. & Prof. Code § 22577 .................... 5, 7, 10
Cal. Civ. Code. § 56.05 .................... 15, 16
Cal. Civ. Code § 56.06 .................... 9
Cal. Civ. Code § 56.11 .................... 20, 13
Cal. Civ. Code § 1641 .................... 24
Cal. Civ. Code § 1654 .................... 20
Cal. Civ. Code § 1656 .................... 19
Cal. Civ. Code § 1798.100 .................... 18
Cal. Civ. Code § 1798.120 .................... 19, 20
Cal. Civ. Code § 1798.140 .................... 5, 7, 10, 19, 20

Cal. Civ. Code §§ 56.10 .......... 20
Cal Civ. Code § 1798.80 .......... 5

**Rules**

Fed. R. Civ. P. 12 .......... *passim*
Fed. R. Civ. P. 12(b)(1) .......... 4, 15
Fed. R. Civ. P. 12(b)(6) .......... 2, 4, 5, 17
Fed. R. Civ. P. 12(f) .......... 2, 4, 5, 6
Fed. R. Evid. 201(b) .......... 5, 23
Fed. R. Evid. 401, 402 .......... 1
Fed. R. Evid. 602, 901(a) .......... 7
Fed. R. Evid. 801, 802, 805 .......... 1

**Regulations**

45 C.F.R. § 164.508(a)(3) .......... 13, 20

## INTRODUCTION

"The wise speak only of what they know."[1] That admonition is particularly apt here, where defendant repeatedly substitutes incorrect confident assertions for what the pleadings, the record, and the law establish. This case concerns Willow Health Services, Inc.'s ("Willow" or "Defendant") disclosure of patients' private medical information to third-party advertising companies without the requisite consent. Unable to confront the controlling authority governing plaintiff Kristy Wilce's ("Plaintiff") claims, Willow resorts to mudslinging and unfounded assertions that the record does not support. Indeed, it devotes its Introduction to voluntary dismissals in other actions, invites the Court to infer impropriety from them, and speculates as to why they were dismissed—without ever explaining how that history bears on whether Willow unlawfully disclosed patient data.[2] It does not.

Worse, Willow's arguments repeatedly rely on material misstatements. Two examples:

*First*, Willow tells this Court that Plaintiff "did not [serve a pre-suit CCPA notice]—nor alleges [*sic*] that she did." Mot. 22. The Complaint alleges the opposite, thrice. ¶¶222, 232, 244.[3] And the record confirms it—Plaintiff's CCPA § 1798.150(b) notice was delivered on May 5, 2026 to Willow's registered agent. Sandoval Decl. ¶¶ 2-4, Exs. A-C. Indeed, Plaintiff's counsel specifically informed Willow of this at the pre-filing conference of counsel. Sandoval Decl. ¶ 6.

---

[1] J.R.R. Tolkien, *The Two Towers*, bk. III, ch. 6 (1954). Willow's Introduction complains of "sequels." Mot. 9. Plaintiff notes that many sequels are better than the original. *See* Eliana Dockterman, *39 Sequels That Are Better Than the Original*, TIME (updated June 11, 2024) (including *The Lord of the Rings: The Two Towers*).

[2] Willow's speculation as to the reasons for the voluntary dismissal of the *Jacobson* action is immaterial to this Motion. Willow stipulated to that dismissal and its assertions as to why Ms. Jacobson chose to dismiss that case are pure conjecture. The filing of this action in the Northern District of California was the result of a scrivener's error and an internal miscommunication; it was voluntarily dismissed promptly upon counsel's discovery of the error and refiled, here, in the proper district. The out-of-court remark Willow features in its Introduction, Mot. 9, is drawn from a declaration executed by a different declarant, Matthew Venezia, filed in a different case, describing what he says Plaintiff's counsel told him. Lombardo Decl. Ex. B ¶ 4. Willow thus offers, for the truth of the matter asserted, an improperly authenticated out-of-court statement recounting another out-of-court statement. Fed. R. Evid. 801, 802, 805. It is not judicially noticeable for its truth, *Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001), and it bears on no element of any claim or defense, Fed. R. Evid. 401, 402. Plaintiff will not burden the Court with a response beyond noting that the excerpt is misleading as presented, and stands ready to address it should the Court wish. Plaintiff respectfully requests that the Court disregard the Lombardo declaration, its Exhibits, and Willow's related characterizations, and decide this Motion on the Complaint, the record, and the law.

[3] Citations to "¶#" or "¶¶#" are to the Complaint (ECF No. 1); citations to "Mot." are to Willow's Motion to Dismiss or Strike (the "Motion;" ECF No. 7).

Willow attempts to mislead the Court, nonetheless. Worse still, Willow's own filing indicates why it did not read that notice—it "did not obtain the Complaint from its registered agent account" and did not learn of service for a month. ECF No. 5 at 1:26–27. Similarly, here, Willow had notice. It just did not bother to look.

*Second*, Willow repeatedly asserts that Plaintiff "never accessed startwillow.com." *E.g.,* Mot. 26. The Complaint says the opposite. Nothing in either of Willow's declarations says so. And, it simply is not true.

Willow's improper tactics do not end there. Nearly every one of Willow's substantive arguments relies on evidence the Court cannot consider. Indeed, Willow frames its jurisdictional challenge as a *facial* attack, Mot. 14, which confines the Court to the pleading—then submits two declarations and six exhibits, without a request for judicial notice or any basis for incorporation by reference, and asks the Court to find, contrary to the Complaint, what its website asked, what it aided third parties in intercepting, and what Plaintiff agreed to. *See* § I, *infra*. Similarly, there is no basis to consider its declarations or their exhibits on its 12(b)(6) or 12(f) arguments.

On the merits, each of its challenges fails. Plaintiff pleads the interception of specific, identifiable medical information—*e.g.,* her medical history, current medications, GLP-1 eligibility determination, and selection of a particular prescription—which Courts have consistently held establishes standing and constitutes content. Willow has not, and cannot, establish the requisite prior consent—nor actual consent—particularly because the Privacy Policy Willow argues establishes consent misleadingly tells consumers it does not disclose the HIPAA-protected information at the center of this Complaint without explicit authorization. Willow's section 632 argument misreads the Complaint and the law; its CMIA argument misreads the statute and ignores controlling law; its CCPA argument misreads the Complaint and the statute; its contract argument is not based on a reasonable reading and raises merits disputes; and its Rule 12(f) motion asks this Court to prematurely strike Plaintiff's class claims despite that this litigation is clearly outside the scope of the class waiver and that the standalone class waiver is unconscionable under the only authority Willow relies on.

The Motion should be denied in full.

## FACTUAL BACKGROUND

Willow operates startwillow.com and related properties (the "Website") as a telehealth platform through which consumers obtain prescriptions for GLP-1 weight-loss medications, and requires users to submit health information through an intake assessment to obtain them. ¶¶3-4, 34-39. Willow made the "conscious and intentional decision" to install third party tracking technologies on the Website—including but not limited to, the Pinterest Pixel, the Taboola Pixel, the TikTok Pixel with Advanced Matching, and Microsoft's Bing Ads and Clarity products (the "Tracking Technologies"). ¶¶41, 102. The Complaint pleads how each operates and that they capture the content of Plaintiff's answers to the intake assessment, ¶¶43-101, 109, 110, 115. As evidence, the Complaint reproduces the network traffic and tracker configurations displayed therein. ¶¶100-101, 112, 115.

Plaintiff Kristy Wilce resides in Woodland, Yolo County. ¶¶18, 122. Beginning in December 2024, while physically in California, she accessed the Website to search for GLP-1 treatment options and completed the intake assessment, which "required her to input answers to sensitive questions including her weight, height, weight loss goals, medical history, and current medical regimen." ¶¶123-124. She then "navigated to and selected a prescription for the GLP-1 injectable product." ¶125. That information—"including her weight, weight loss goals, eligibility for GLP-1 prescriptions, and selection of prescription"—was intercepted by the Tracking Technologies. ¶126. She did not consent to having her sensitive, HIPAA-protected intake answers intercepted by the Tracking Technologies. ¶¶127-128.

Willow's Privacy Policy was not presented to users until after the intake and the associated interceptions, did not disclose the use of the Tracking Technologies to intercept HIPAA-protected information and, in fact, misleadingly tells users the opposite. ¶119. It emphasizes Willow's "commitment to the principles of patient rights, privacy, and HIPAA compliance" and represents that "explicit authorization is obtained before using PHI for marketing purposes." ¶¶119, 251-252. And it represents that Willow "does not…sell or rent personal information…to any other third-party for any purpose," such that Willow does "not offer individuals the ability to 'opt-out'…because we do not engage in those practices." ¶121.

Willow's conduct violates the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510 *et seq.*; the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631 and 632; the Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code §§ 56.06, 56.10, 56.101, and 56.36; and the California Consumer Privacy Act ("CCPA"), Cal. Civ. Code §§ 1798.100(a)–(c) and 1798.150(a)(1). It also breaches Willow's own Privacy Policy, unjustly enriches Willow at the expense of its patients, and invades Plaintiff's privacy rights under the California Constitution.

## LEGAL STANDARDS[4]

**Standing.** On a *facial* attack under Rule 12(b)(1)—the only kind Willow asserts, Mot. 14—the Court is confined to the pleading, accepts its allegations as true, and draws all reasonable inferences for the plaintiff. *Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th Cir. 2004); *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

**Failure to State a Claim.** On a Rule 12(b)(6) motion the Court "accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff," *JustM2J LLC v. Brewer,* 2025 WL 3208815, at *4 (E.D. Cal. Nov. 17, 2025) (Drozd, J.). Dismissal is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts under one. *Id.* "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss[.]" *Id.*

**Motion to Strike.** Rule 12(f) provides that a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike "are generally regarded with disfavor because of the limited importance of pleading in federal practice," and they "are generally not granted unless it is clear that the matter sought to be stricken could have no possible bearing on the subject matter of the litigation." *Gaines v. AT&T Mobility Servs., LLC*, 424 F. Supp. 3d 1004, 1014 (S.D. Cal. 2019).

//

//

//

---

[4] Willow's Notice of Motion, running footer, and proof of service each invoke Rule 12(b)(2). However, Willow advances no personal-jurisdiction argument.

## ARGUMENT

### *I. The Court Should Disregard Willow's Extrinsic Evidence, Which Is Improperly Submitted and, In Any Event, Insufficient.*

At least four of Willow's arguments—standing, consent, breach of contract, and the class-action waiver—depend substantially or entirely on the Green Declaration and its exhibits. That material is not properly before the Court, and none of it establishes what Willow says it does.

#### A. Willow cannot declare a facial attack and then submit misleading extrinsic evidence.

Willow expressly invokes the standard for a *facial* Rule 12(b)(1) attack, Mot. 14, which is confined to the pleadings, *Safe Air*, 373 F.3d at 1039. Willow then incorrectly argues that the Complaint does not assert that identifying information was captured and attaches a declaration which asserts that the quiz "does not ask [users] for any personally identifiable information," Green Decl. ¶ 5, and that "[a]t no point . . . is the user ever required to enter . . . any personally identifiable information," *id.* ¶ 6—propositions squarely contrary to the Complaint. ¶¶105-106, 107 (displaying image of quiz requesting email address and phone number), 124; *see also* Cal. Bus. & Prof. Code § 22577(a) (email and phone number are personally identifiable information); Cal Civ. Code § 1798.140(v) (listing "unique personal identifier, online identifier," "email address" as personal information); Cal Civ. Code § 1798.80 (listing telephone number as the same). Willow cannot have it both ways. If the attack is facial, the declaration is irrelevant and the Complaint controls. If Willow intends a factual attack, it was required to say so, and Plaintiff would be entitled to present controverting evidence and jurisdictional discovery. *Leite*, 749 F.3d at 1121. Even then dismissal would be improper, because where the jurisdictional question is intertwined with the merits—as an inquiry into what Willow collected and transmitted plainly is—a court may not resolve it under Rule 12(b)(1). *Id*. n. 3; *Safe Air*, 373 F.3d at 1039-40; *Rosales v. United States*, 824 F.2d 799, 803 (9th Cir. 1987); *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983).

#### B. Extrinsic evidence cannot be used on Willow's Rule 12 arguments.

On Rule 12(b)(6) or 12(f) motions the Court may consider only the complaint, documents incorporated by reference, and matters subject to judicial notice. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018); *Keith v. City of San Diego*, 2023 WL 5618941, at *1 (S.D. Cal. Aug. 30, 2023). Willow satisfies neither exception.

**1. Willow filed no request for judicial notice and the documents attached to and included within the declarations are not judicially noticeable.**

Willow submitted its exhibits by attorney and party declaration alone. It has not asked the Court to judicially notice anything, and so has not attempted to show that any fact in those documents is "not subject to reasonable dispute" or from "sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The omission is dispositive. *Tomek v. Apple, Inc.*, 2013 WL 3872774, at *2 n.5 (E.D. Cal. July 25, 2013), *aff'd*, 636 F. App'x 712 (9th Cir. 2016) (declining to consider document that was "neither alleged nor relied upon in the" operative complaint and the movant "has not requested judicial notice of this document"). Even if they had requested judicial notice, it would be improper here. As to the filings in other litigations (Lombardo Decl. Ex. B), a court may not notice the truth of the facts asserted therein, *Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001), and as to the assertions concerning the onboarding quiz which are contradicted by the complaint's allegations (Green Decl. ¶¶ 4-10), a court may not notice disputed facts, *Khoja*, 899 F.3d at 999. Indeed, this Court recently declined to notice a defendant's proffered evidence on similar grounds. *JustM2J*, 2025 WL 3208815, at *9 n.8. And as to the Terms and Conditions (Green Decl. Ex. A), Mr. Green attests only that they were "in effect in 2024," *id*. ¶ 11—not throughout 2024, and not when Plaintiff used the Website "in December 2024 *and afterward*," ¶¶18, 123—while conceding the Website "has changed," *id*. ¶3, and the Terms are revised "from time to time," Ex. A § 12.C. Whether these Terms governed is thus "subject to reasonable dispute," and notice would establish only that the document exists, not that it applied to Plaintiff or that she assented to it. *Khoja*, 899 F.3d at 999; *Lee*, 250 F.3d at 689–90.

**2. The Terms and Conditions and the other documents attached to the declarations are not incorporated by reference.**

Incorporation by reference requires that "the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Khoja*, 899 F.3d at 1002 (citation omitted). The Complaint never mentions Willow's Terms and Conditions—not once, let alone extensively, and no claim rests on them. Willow's entire Rule 12(f) motion thus depends on a contract that is neither subject to judicial notice nor incorporated by reference. *See infra* § XI. Similarly, with the exception of the Privacy Policy, none of the other documents attached to, or included within, either

of the Green or the Lombardo declaration are referenced or relied on in the complaint and none can be incorporated by reference. *Khoja*, 899 F.3d at 1002. Accordingly, with the exception of the Privacy Policy, the entirety of the Green and Lombardo declarations can be disregarded.

**C. If considered, the Green Declaration does not support Willow's arguments.**

Even setting aside the procedural bar, the Green Declaration is insufficient on its face. For one, its foundation is the Wayback Machine, not personal knowledge. Mr. Green declares personal knowledge of the Website and access to its records. Green Decl. ¶ 3. Yet every screenshot is sourced not from Willow's records but from a third-party internet archive. *Id.* ¶ 4 n.1. A declarant with genuine personal knowledge of his own company's website and access to its records has no reason to reconstruct it from archive.org. Willow has not authenticated the archive captures, offered testimony from anyone with knowledge of how the internet archive operates or what it fails to capture, or explained its failure to produce its own records. *Cf.* Fed. R. Evid. 602, 901(a). Nor does the declaration state that the archived pages *were* of the December 2024 website that Plaintiff would have encountered (¶123); it states only that they "reflect[] *and/or [are] consistent with* how startwillow.com appeared, functioned, *and/or* operated as of December 2024." Green Decl. ¶ 4 n.1 (emphases added). "Consistent with" is disputable characterization, and the disjunctive makes it impossible to assess which screenshots accurately reflect Plaintiff's experience, and which do not. *See, e.g.*, *Snow v. Eventbrite, Inc.*, 2020 WL 6135990, at *6 (N.D. Cal. Oct. 19, 2020) (Defendant "would only be able to carry its burden if it could show what…the plaintiffs *would have actually seen*.") (emphasis added). The problem is exceedingly consequential; for example:

- The screenshot Willow offers to establish the consent flow is not from December 2024 at all. It is "from February 2026" offered as "an exemplar". Green Decl. ¶ 8.
- The single screenshot said to show the consent checkbox did not render. The declaration concedes that it "appears to have downloaded only partially," and therefore does not reflect what any visitor would have seen. *Id.* ¶ 9.
- The Terms and Conditions are described only as those "in effect in 2024"—not as of December 2024. *Id.* ¶¶ 11–12. The Website launched in May 2024, *id.* ¶ 3, and Mr. Green does not state that the document was unchanged during 2024, when it was adopted, or that only one version existed or has not been superseded.

In any event, the Green declaration supports the Complaint's consent allegations and defeats many of Willow's arguments. Indeed, Mr. Green concedes that the intake flow collects an email address (arguing only that the user "may 'SKIP STEP,'" Green Decl. ¶ 6), that it inquires about

"weight loss goals or medical history," *id.* ¶ 9, and that it culminates in an eligibility determination for Willow's GLP-1 products, *id.* ¶ 7. Those are the very communications the Complaint alleges were intercepted. ¶¶105-108, 124-126. Further, the screen asking for an email attached to the Green declaration differs from that in the Complaint. *Compare* ¶107 *with* Green Decl. ¶ 5-6. And, the screen in the complaint does not allow a user to skip providing their email. *Id.* Further, the Green declaration is internally inconsistent. It says both that the quiz "does not ask [users] for any personally identifiable information" and includes a screenshot asking users for their email address. *Compare* Green Decl. ¶ 5 *with* Cal. Bus. & Prof. Code § 22577(a) (email is personally identifiable information); Cal. Civ. Code § 1798.140(v) (same). These inconsistencies make it even more "subject to reasonable dispute" and confirm that it is not noticeable. *Khoja*, 899 F.3d at 999.

## *II. Plaintiff Has Article III Standing.*

### A. The Complaint identifies specific, sensitive, identifiable medical information.

The thrust of Willow's argument against standing is that Plaintiff "fails to identify what personal information she purportedly transmitted." Mot. 15. As with most of Willow's confident assertions, this is just plain wrong. She does, in detail: her weight, height, weight-loss goals, medical history, and "current medical regimen," ¶124; her answers to questions about medical conditions, current medications, and whether she was "pregnant, lactating, or trying to get pregnant," ¶107; her eligibility determination for a GLP-1 prescription, ¶¶108, 126; and her *selection of a specific prescription*, ¶¶125-126. The Complaint also specifically alleges that this information was transmitted to the third party Tracking Technologies—including by attaching network transmissions evidencing the same in places. ¶¶106, 112, 114-116, 126.

Courts consistently recognize that the "intentional unauthorized disclosure of . . . sensitive medical information [is] so highly offensive that it is sufficient" to confer standing. *Toy v. LifeLine Screening of Am. Ltd.*, 2024 WL 1701263, at *4 (N.D. Cal. Mar. 19, 2024); *see also In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1143 (C.D. Cal. 2021). This bears the requisite "close relationship" to harms long actionable at common law—intrusion upon seclusion and public disclosure of private facts. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424–25 (2021); *see also Brayfield v. Advanced Hair Restoration LLC*, 2026 WL 2138552, at *3 (C.D. Cal. July 24, 2026)

(plaintiff's "alleged injury is comparable to the injury that would result from public disclosure of private facts" it is "not of legitimate public concern, and a reasonable person could find exposure of [fact that plaintiff was seeking hair loss treatment] highly offensive."). Indeed, Courts have found materially identical allegations sufficient at the pleading stage. *Ward v. Mochi Health Corp.*, 2026 WL 2584947, at *1 (N.D. Cal. Sept. 1, 2026) (interception of GLP-1 weight-loss drug intake answers sufficiently sensitive to confer standing). This Court should find the same.[5]

**B. Mikulsky is materially distinguishable.**

Willow's standing argument relies almost entirely on *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855 (S.D. Cal. 2023). However, *Mikulsky* is materially distinguishable. The complaint there concerned a non-medical[6] weight-loss accountability website whose user "visited Noom's website to browse its products" and "used her mouse to hover and click on certain products and services and typed her personal information into text fields." *Id.* at 860. It alleged no prescription, no medical intake, no specific questions asked on such intake, and no provider relationship—such that the court was "unable to determine whether the 'personal information' Plaintiff inputted [was] protected or whether it was merely information akin to basic contact information." *Id.* at 864.[7] The Complaint here is the opposite. Willow is a telehealth provider that prescribes GLP-1 medications, ¶¶3-4, 34, 36, 108; is a deemed provider of health care under Cal. Civ. Code § 56.06(b), ¶¶198, 203–204; represents in its own Privacy Policy that it is subject to HIPAA, ¶119; and requires users to "submit

---

[5] Further, whether an invasion of privacy is highly offensive is a fact-intensive inquiry that courts are reluctant to resolve at the pleading stage. *See, e.g.*, *Katz-Lacabe v. Oracle Am., Inc.*, 668 F.Supp.3d 928, 942–43 (N.D. Cal. 2023). Only if the allegations show no reasonable expectation of privacy or an insubstantial impact on privacy interests can the question of a serious or highly offensive invasion of privacy be adjudicated as a matter of law. *See Gabrielli v. Motorola Mobility LLC*, 2025 WL 2494368, at *8 (N.D. Cal. July 14, 2025).

[6] Noom began offering GLP-1 weight loss drugs in May of 2023. Press Release, Noom, Inc., *Noom, Inc. Launches Noom Med, A Best-in-Class Individualized Obesity Care Program Powered by Biology and Psychology* (May 24, 2023), https://www.noom.com/blog/noom-inc-launches-noom-med/. *Mikulsky* predates that offering and it did not address medical intake for GLP-1 weight loss drug prescriptions—only the non-medical weight loss accountability website. *See* Request for Judicial Notice ("RJN"), Ex. 1 *Mikulsky v. Noom, Inc.*, No. 3:23-cv-00285 (S.D. Cal. Sept. 29, 2023), ECF No. 34 (amended complaint, never mentioning GLP-1 offering or medical intake).

[7] *Straubmuller v. Jetblue Airways Corp.*, 2023 WL 5671615, at *4 (D. Md. Sept. 1, 2023) and *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023) are inapposite for the same reasons—unlike here, those complaint said nothing about the kinds of interactions the plaintiffs had with the defendants' websites and the websites themselves did not deal in sensitive medical information.

health information through a comprehensive onboarding quiz that requests detailed medical information" which is intercepted by third parties in violation of their reasonable expectations of privacy, ¶¶39, 102, 107, 109, 116–117, 184. That information specifically includes users' medical conditions, current medications, and pregnancy or lactation status, along with their weight, height, weight-loss goals, and medical history—and, Plaintiff's eligibility determination for a GLP-1 prescription and her selection of a specific prescription. ¶¶105-07, 124-26. In sum, defendant "does not point to a single case where a court found that the collection of the kinds of [medical] information at issue here did not constitute a highly offensive invasion of privacy" and standing is proper here. *In re Meta Pixel Healthcare Litig*., 647 F. Supp. 3d 778, 801 (N.D. Cal. 2022).

**C. Willow's remaining standing arguments fail.**

Willow's remaining standing arguments are no more persuasive. *First,* Willow argues, without authority, that a unique identifier does not disclose identity. Mot. 16. However, the Complaint does not rest on unique identifiers alone; it alleges that Plaintiff's email address and phone number were captured and transmitted. ¶¶106, 114, 116; *see also* Cal. Bus. & Prof. Code § 22577(a); Cal. Civ. Code § 1798.140(v). Regardless, Willow's position is contrary to controlling authority—the Ninth Circuit has held that interception of such unique identifiers disclose identity and inflict a cognizable privacy injury. *In re Facebook Internet Tracking*, 956 F.3d 589, 598–600 (9th Cir. 2020); *accord Semien v. PubMatic Inc.,* 2026 WL 216333, at *5 (N.D. Cal. Jan. 27, 2026); *Riganian v. LiveRamp Holdings Inc.*, 791 F. Supp. 3d 1075, 1087 (N.D. Cal. 2025). Further, Willow again mischaracterizes the complaint in arguing that Plaintiff alleges only that "the technology *may* assign a user identifier to the consumer" It alleges in detail that each of the Tracking Technologies in-fact assigned and transmitted unique identifiers. ¶¶71, 86, 101, 111–112, 116.

*Second,* Willow argues that because Plaintiff never alleges she has a TikTok account, Advanced Matching did not work. Mot. 17. However, this argument ignores half of the sentence Willow cites. Advanced Matching matches visitors to "TikTok user accounts, *or other personally identifiable profiles created by TikTok to identify non-users*," (¶69) and TikTok stores associations between identifiers and browsing behavior "even if users are not logged into TikTok or do not have the TikTok app installed on their devices." ¶72. Accordingly, this argument fails because Plaintiff

need not have an account to be tracked and de-anonymized by TikTok. *Semien,* 2026 WL 216333, at *5. Similarly, the Complaint alleges that the Tracking Technologies *were in-fact* configured to capture sensitive information and reproduces both the configuration and the resulting transmissions from Willow's own Website. ¶¶100-102, 109-112, 115, 126; *JustM2J,* 2025 WL 3208815, at *4.

*Third,* Willow argues that information about weight is not private. Mot. 17 n.2 (citing *Best v. Berard*, 837 F. Supp. 2d 933, 938 (N.D. Ill. 2011)). *Best* is an out-of-circuit § 1983 case about a constitutional privacy interest in height and weight. However, in-circuit online tracking cases have repeatedly disagreed. *Shah v. MyFitnessPal, Inc.,* 824 F. Supp. 3d 906, 914 (N.D. Cal. 2026) ("personal topics like nutrition and fitness" sufficiently private to confer standing); *Mochi*, 2026 WL 2584947, at *1 (interception of GLP-1 weight loss drug intake sufficiently sensitive to confer standing). Moreover, this case is not about the interception of weight alone. It is about the interception of medical intake for a GLP-1 prescription, including a medical-conditions questionnaire, a medications list, and pregnancy status. *Compare L.B. v. LinkedIn Corp*., 2025 WL 2899514, at *7 (N.D. Cal. Oct. 10, 2025) ("while…weight loss goals[ ]may not be considered medical or private in isolation, [when combined with other details and when] provided in the context of seeking medical services" they are sensitive and confer standing) *with* ¶¶107, 124–126.

### *III. Willow Has Not Met its Burden on Prior or Actual Consent.*

As "the party seeking the benefit of the exception," Defendant must prove consent. *Matera v. Google Inc*., 2016 WL 5339806, at *17 (N.D. Cal. Sept. 23, 2016). It has not done so.

**No Prior Consent**. Consent must be obtained before the privacy violation occurs. *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022). Here, any consent is ineffective because Tracking Technologies begin intercepting user data the moment a visitor lands on the Website—before any Privacy Policy is presented. Users are routed to "an onboarding assessment quiz *before they have an opportunity to consent to any terms of service or privacy policy*," ¶104, during which the Tracking Technologies are "active throughout," ¶109. "[A]t no point during the quiz process does the user consent." ¶117; *see also* ¶¶127-128, 173(c), 188(e).[8]

[8] Although not properly considered on a motion to dismiss, Willow's own declaration confirms that sequence rather than refuting it. Mr. Green places the consent checkbox *after* the user completes the intake assessment and clicks "START MY FREE VISIT." Green Decl. ¶¶ 5-9. On Willow's own account, then, a user answers

**No Actual Consent.** To defeat privacy claims "consent must be actual." *In re Google, Inc.*, 2013 WL 5423918, at *12 (N.D.Cal. Sept. 26, 2013). Actual consent requires disclosures that "explicitly notify" users of the "specific practice" at issue (*id.* at *13; *Campbell v. Facebook, Inc.*, 77 F.Supp.3d 836, 847–48 (N.D.Cal. 2014)) and have "only one plausible interpretation." *Calhoun v. Google LLC*, 526 F.Supp.3d 605, 620 (N.D.Cal. 2021). Here, there is no consent because a reasonable user would have not understood from Defendant's generalized disclosure that data would be used in violation of HIPAA. *See Calhoun v. Google, LLC*, 113 F.4th 1141, 1151 (9th Cir. 2024).

This case is more like *In re Meta Pixel Healthcare Litigation*, 647 F.Supp.3d 778, 791, 793-794 (N.D.Cal. 2022), where general data sharing disclosures were insufficient to consent to alleged HIPAA violations, than Defendant's cited case, *Lakes v. Ubisoft, Inc.*, 777 F.Supp.3d 1047, 1057 (N.D.Cal. 2025) *appeal docketed and oral argument requested*, No. 25-2857 (9th Cir. May 2, 2025), which rejected the need for a notice "that Meta will collect Plaintiffs' 'video game titles combined with unique Facebook identifiers.'" Here, Defendant "does not even argue that its users assented to" the practice at the core of the complaint—violating HIPAA—and Defendant's general information sharing disclosures "do[] not come close to disclosing the massive information-sharing program with business partners that the plaintiffs allege in the complaint." *In re Facebook, Inc.*, 402 F.Supp.3d 767, 792 (N.D.Cal. 2019); *see also Lynch v. Express Scripts Holding Co.*, 2025 WL 2224419, at *9 (N.D.Cal. Aug. 5, 2025) ("generalized disclosures are insufficient to resolve the issue of consent as a matter of law on the pleading stage").

More to the point, Willow's Privacy Policy states that Willow "does not…sell or rent personal information…for any purpose," and therefore does "not offer individuals the ability to 'opt-out'…because we do not engage in those practices," ¶121; states that "explicit authorization is obtained before using PHI for marketing purposes," ¶252; and never identifies Pinterest, Taboola, TikTok, or Microsoft, ¶119. A disclosure that affirmatively denies a practice cannot establish

---

the entire medical intake assessment before encountering any policy at all. Mr. Green's statement that the screen comes "before he/she can proceed to answering any questions" is just another attempt to confuse the issues and mislead the Court. *Id.* ¶ 9. The intake questionnaire that determines eligibility precedes this screen. That *additional* questions follow that screen is immaterial because interceptions occur *before* this screen. ¶¶103-04.

informed consent to it; at most it creates a factual dispute about what a reasonable user would have understood. *Calhoun*, 113 F.4th at 1149; *M.D. v. Google LLC*, 2025 WL 2710095, at *4 (N.D. Cal. Sept. 23, 2025) ("At minimum, the majority of the…Privacy Policy iterations reproduced by Defendants are ambiguous as to the purported consent Defendants claim here, particularly where the Privacy Policies make no reference to disclosure of private health information to [Pinterest, Taboola, TikTok, or Microsoft]"); *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *2 (N.D. Cal. Apr. 4, 2025) ("[I]f the contract language at issue is reasonably susceptible to more than one interpretation, with one of those interpretations suggesting consent and another belying it, the Court cannot decide the consent issue in [Willow's] favor at the motion to dismiss stage.") (citing *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 789 (N.D. Cal. 2019)).[9]

### *IV. ECPA and CIPA § 631—URLs, Button Clicks, and Form Entries are Contents.*

Willow's only argument for dismissal of the ECPA and CIPA § 631 claims is that they fail to allege the contents of communications. However, contents are more than adequately alleged. "Contents" of an online communication "refers to the intended message conveyed by the communication[.]" *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). The Complaint alleges interception of the full-string URLs disclosing the specific questionnaire pages Plaintiff traversed, ¶¶100, 112; her text inputs and clicks on every page of the intake and onboarding process, ¶¶110, 113, 115; and the name and email address she entered, ¶¶106, 114, 116. As Courts including the Ninth Circuit have found, repeatedly, "[t]his information constitutes contents of communications under CIPA and the ECPA." *Gilligan v. Experian Data Corp.*, 2026 WL 32259, at *3 (N.D. Cal. Jan. 6, 2026) (finding URLs are content) (citing *Selby v. Sovrn Holdings, Inc.*, 2025 WL 2950164, at *3 (N.D. Cal. Oct. 17, 2025)); *Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 837–38 (E.D. Cal. 2025) (same); *Rack Room*, 2025 WL 1085169, at *4 (finding that "URLs, button clicks," and readable versions of Plaintiffs' PII, including their names generated when they entered that information into a website form was contents); *see also Doe v. Regents of University of California*,

[9] Further, the CMIA requires an authorization satisfying Cal. Civ. Code § 56.11, and HIPAA requires a written authorization specific to marketing, 45 C.F.R. § 164.508(a)(3). *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 797.

672 F. Supp. 3d 813, 815-19 (N.D. Cal. 2023) (rejecting argument that plaintiff needed to "provide more specific medical details," finding that allegations that plaintiff "entered medical information, including information relating to her heart issues and high blood pressure" sufficient); *See also In re Facebook Internet Tracking*, 956 F.3d at 605–08; *Mikulsky v. Bloomingdale's, LLC,* 2025 WL 1718225, at *1 (9th Cir. June 20, 2025) (reversing dismissal for lack of content where, inter alia, URLs and button clicks were alleged); *Mikulsky v. Bloomingdale's LLC*, 2024 WL 3091395, at *3 (S.D. Cal. May 14, 2024). Although Willow misreads *Yoon* and the cases it cites as finding that names, email addresses, phone numbers, and URLs are not categorically not content, *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021), that is not the law. Where such fields convey the "substance, purport, or meaning of [a] communication" they are content. *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 795 (quoting 18 U.S.C. § 2510(8)) (finding URLs and "contact information provided as part of a sign-up process constitutes 'content' because this information is the subject of the communication").

Willow argues that because "the majority of the questions required the user to select a pre-written answer by clicking the corresponding box," the resulting communications are "not content." Mot. 20. That confuses the *format* of a message with its *intended message*. A user who checks the box marked "High Blood Pressure," ¶107, communicates that she has high blood pressure; a user who selects "Yes" in response to "Are you pregnant, lactating, or trying to get pregnant?" communicates her pregnancy status. *Id.* Courts, including the Ninth Circuit, have squarely rejected this argument. *Rack Room*, 2025 WL 1085169, at *4; *Mikulsky,* 2025 WL 1718225, at *1.

### ***V. CIPA § 632—Non-consensual Recording and Aiding Eavesdropping.***

Willow's only argument for dismissal of Plaintiff's section 632 claim is that it does not apply to parties to a communication. Again, this position misreads the complaint and has been squarely, and repeatedly, rejected by courts—including appellate courts. Although some courts have found that a party cannot eavesdrop on its own conversation under § 632, even Willow's cited authority recognizes that the exception "applies to 'eavesdropping,' but not 'recording.'" *Turner v. Nuance Commc'ns, Inc.*, 2024 WL 2750017, at *8 n.4 (N.D. Cal. May 28, 2024) (citing *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 119 n.4 (2006) (a defendant can be liable under section 632 for

recording its own conversation with plaintiff if plaintiff did not consent to the recording)); *see, e.g.*, ¶¶ 185-188 (alleging Willow used the Tracking Technology to record Plaintiff's communications with Willow without consent).

More fundamentally, Plaintiff's claim is not only that Willow recorded their conversation without consent, but also that Willow aided *third parties* in eavesdropping without consent. And, "[i]n civil lawsuits for violations of section 632, courts have . . . imputed the civil liability standard for aiding and abetting to determine the scope of derivative liability" and allowed such claims. *Rack Room*, 2025 WL 1085169, at *5; *Mochi*, 2026 WL 2584947, at *3. Here, Plaintiff alleges that Willow had knowledge of the Third Parties' "breach of duty and…provided substantial assistance," 2025 WL 1085169, at *5. because Plaintiff alleges that Willow knew the Third Parties' data collection had the purpose of tracking health-related and other communications, ¶¶ 41-101, 102, 116, "despite provisions of [its] policy that created a contrary expectation," 2025 WL 1085169, at *5; ¶¶ 118-121, 184. Furthermore, the allegation that Willow "knowingly and affirmatively embedded" the third parties' "code into its website is sufficient to plead substantial participation." 2025 WL 1085169, at *5; *see, e.g.*, ¶¶102, 171.

### *VI. CMIA—Plaintiff Specifies What Information was Entered and Viewing or Access is not Required.*

Willow's only arguments for dismissal of Plaintiff's CMIA claim is that Plaintiff does not specify what information was entered on the Website and does not plead that the information was "improperly viewed or otherwise accessed." Again, both are contrary to the Complaint and controlling authority.

*First*, medical information under the CMIA includes "'a patient's medical history, mental or physical condition, or treatment.'" *Wilson v. Rater8, LLC*, 2021 WL 4865930, at *4 (S.D. Cal. Oct. 18, 2021) (quoting *Eisenhower Med. Ctr. v. Superior Court*, 226 Cal. App. 4th 430, 435 (2014)). As discussed above, Plaintiff specifically alleges precisely this, in detail, including her weight, height, weight-loss goals, medical history, and current medical regimen, ¶124; her responses to the intake questionnaire's questions about current medications, existing medical conditions, and whether she was pregnant, lactating, or trying to become pregnant, ¶¶107, 124; her eligibility determination for a GLP-1 prescription, ¶¶108, 126; and her selection of a specific GLP-1

prescription, ¶¶125-126. Each is "a patient's medical history, mental or physical condition, or treatment." Cal. Civ. Code. § 56.05(i). Unlike here where it was disclosed that Plaintiff sought and obtained a prescription for weight loss, in *Wilson*, the plaintiff alleged only that their "contact information and appointment date" was disclosed. *Id.* at *5; *see also Strong v. LifeStance Health Grp. Inc.,* 2025 WL 317552, at *11 (D. Ariz. Jan. 28, 2025) (sustaining CMIA claim and distinguishing *Wilson* because "plaintiffs have alleged far more personal medical information than that in *Wilson*, including the types of treatment sought for specific mental health complaints").[10] Although conceding that this information is sensitive (Mot. at 21:16), Willow argues that because Plaintiff may have entered "no" to such questions, they are not sensitive medical questions. That is as nonsensical as it is unsupported. A patient's response that they are *not* lactating is no less a patient's physical condition than a response that they are. Cal. Civ. Code. § 56.05(i). Similarly, Willow's speculative argument that the responses may be untrue is clearly a merits dispute incapable of resolution on the pleadings. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Finally, Willow's position that Plaintiff should be required to disclose all of the answers to her intake in a public filing—she should tell the world her weight, medications she's taken, history of medical conditions, etc.—is not only not the law, *e.g., LifeStance,* 2025 WL 317552, at *11 it is offensive and underscores that Willow disregards its patients' privacy.

*Second,* the "viewed or accessed" requirement does not apply to the affirmative disclosure claim. Although Willow argues that Plaintiff must allege her information was "improperly viewed or otherwise accessed," Mot. 21 (citing *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1128 (S.D. Cal. 2023)) that requirement derives from § 56.101, which addresses the *negligent maintenance* of records—circumstances in which records are exposed but perhaps never seen. It does not govern the § 56.10 claim at issue here, addressing where the provider itself *affirmatively disclosed* medical information without authorization. *See Sutter Health v. Superior Court*, 227 Cal.

[10] Again attempting to mislead the Court, Willow asserts, without support that "evidence shows Plaintiff did not actually enter any information" Mot. at 21. No such evidence has been presented to the Court or Plaintiff. If this were true (it is not) it would raise serious concerns that Willow prescribed her GLP-1 medications without her providing her medical background information. *See* ¶¶ 125-126 (Plaintiff was found eligible for and selected a GLP-1 prescription).

App. 4th 1546, 1555-57 (2014). Plaintiff pleads affirmative disclosure: Willow "knowingly shared …and disclosed [her] medical information…to at least Pinterest, Taboola, TikTok, and Microsoft." ¶205; *see id.* ¶¶209-210. Where the provider transmits the information itself, the disclosure is complete on transmission, and no allegations of actual viewing are required. *Sutter Health*, 227 Cal. App. 4th at 1555–57. Further, because Plaintiff alleges that the third parties use the information for their own purposes "[i]t is sufficiently plausible at this time that Plaintiffs' information was 'viewed or otherwise accessed' as contemplated by CMIA." *Compare Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 975 (S.D. Cal. 2023) *with* ¶¶8, 33, 208.[11]

In any event, the California Supreme Court has specifically rejected Willow's argument that improper viewing or accessing are required. *J.M. v. Illuminate Educ., Inc.*, 19 Cal. 5th 705, 722-23 (2026). Here, the information was not merely "exposed to a significant risk of unauthorized access or use" (*id.*)—it was affirmatively transmitted to third-party advertising companies that collect user data from across the internet to build identifiable profiles. ¶¶8, 33, 69-72, 58, 112, 100-101, 111, 116, 130, 205, 208. If a risk of unauthorized access suffices under *Illuminate*, completed disclosure to four commercial recipients plainly does.

### *VII. CCPA—Plaintiff Served the Notice and 1798.150 applies to 1798.100.*

#### A. Plaintiff served the statutory notice, and pleaded that she did.

Willow's principal argument for dismissal of Claim 7 is that Plaintiff "did not [satisfy the CCPA's 30-day notice requirement]—nor alleges that she did." Mot. 22. Both are wrong.

The Complaint alleges thrice that "Defendant has had more than 30 days' notice…and has failed to cure." ¶¶222, 232, 244. On a Rule 12(b)(6) motion that allegation is accepted as true, and it disposes of the argument without more. In any event, Plaintiff's notice under § 1798.150(b) was delivered on May 5, 2026, by certified mail, to Willow's registered agent. Sandoval Decl. ¶¶ 2-4, Exs. A-C. This action was filed on July 15, 2026, seventy-five days later. Willow never provided the "express written statement that the violations have been cured and that no further violations shall

[11] Further, Plaintiff is not required to "establish that she received any targeted advertisements *because of* her purported activity on startwillow.com" as Willow argues. Mot. at 22; *Cousin*, 681 F. Supp. 3d at 1128 (requiring only allegations that Plaintiff received targeted advertisements).

occur" that § 1798.150(b) requires to defeat a statutory-damages claim; it never responded at all. Sandoval Decl. ¶ 5. A defendant's failure to collect notice delivered to a registered agent is not a failure of notice by the consumer—it's a failure to look. *See* § Introduction *supra.*

Alternatively, § 1798.150(b)'s notice requirement is a precondition only to "initiating any action against a business *for statutory damages*." It does not condition claims for actual damages or for injunctive or declaratory relief, both of which Plaintiff seeks. ¶246; Prayer ¶¶C, G. And, as Courts have found when addressing the same argument, this distinction is inappropriate for resolution on the pleadings because "a motion to dismiss must be directed to a claim, not a particular form of damages." *Allison v. PHH Mortg.,* 2026 WL 1353827, at *8 n.4 (N.D. Cal. May 14, 2026).

Finally, Willow's fallback—that § 1798.150 reaches only data breaches—is unsupported by any authority addressing the issue[12] and is contrary to the authority Willow itself supplies; such claims proceed where, as here, "the plaintiff does not allege a data breach, but instead [that] the defendants disclosed plaintiff's personal information without his consent[.]" *Shah v. Capital One Fin. Corp.*, 768 F. Supp. 3d 1033, 1048–49 (N.D. Cal. 2025) (quoting *M.G. v. Therapymatch, Inc.,* 2024 WL 4219992, at *7 (N.D. Cal. Sept. 16, 2024) (finding same)); *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 924 (S.D. Cal. 2020) (same); *see also Allison,* 2026 WL 1353827, at *8 ("Nothing in the plain language of [1798.150] limits its application to data breaches by third parties."). Willow's only distinction is that Plaintiff has not specified her answers, Mot. 22 n.5—and it fails for the reasons stated throughout this opposition (namely, that she did) and because the claim does not require the same. Cal. Civ. Code § 1798.100 *et seq.*

**B. Section 1798.150's private right of action applies to section 1798.100.**

With respect to Claims 5 and 6, Willow argues that Cal. Civ. Code § 1798.100(a)-(c) do not have a private right of action. Mot. 22. However, that argument ignores § 1798.150, which even Willow concedes provides a private right of action for violations of the CCPA. Mot. at 22. Indeed, each of the cases discussed above alleged violations of § 1798.100 and the Courts allowed those claims to proceed. *See, e.g.,* RJN, Ex. 2, *M.G. v. Therapymatch, Inc.,* No. 3:23-cv-04422 (N.D. Cal.

---

[12] *Delgado v. Meta Platforms, Inc.*, 718 F. Supp. 3d 1146, 1155 (N.D. Cal. 2024) addressed only a choice of law issue—not whether the CCPA has a private right of action.

Oct. 3, 2026), ECF No. 17.[13] Claims 5 and 6 constitute violations as defined by § 1798.150(a) because both concern the disclosure of personal information resulting from Willow's failure to implement reasonable security procedures and practices. ¶¶218-222, 229-232, 238-239, 242-245.

### *VIII. Breach of Contract—Willow Did Not Obtain Explicit Authorization and Sold User Data.*

Plaintiff's breach of contract claim identifies five ways in which Willow breached its Privacy Policy (i) sharing user data with third parties for marketing purposes in violation of its promise not to "sell" user data for marketing purposes; (ii) transmitting PHI for marketing without the promised "explicit authorization"; (iii) failing to uphold the promised "principles of patient rights, privacy, and HIPAA compliance" by sharing users' PHI with third parties in violation of HIPAA; (iv) using PHI for targeted advertising and lookalike-audience building without the promised "explicit authorization"; and (v) permitting third parties to build persistent profiles in violation of its promise not to "sell" user data for marketing purposes. ¶255(a)-(e). Both of Willow's arguments, that these are insufficient to allege a breach, fail.

*First*, Willow argues that a breach is not alleged because "sharing and selling are not the same thing." Mot. 22. However, privacy policies presented to California consumers, like Ms. Wilce, must comply with, and must be read against the backdrop of, the CCPA. *Swenson v. File*, 3 Cal. 3d 389, 393 (1970) ("all applicable laws in existence when an agreement is made necessarily enter into it and form a part of it as fully as if they were expressly referred to and incorporated in its terms"); Cal. Civ. Code § 1656. Indeed, Willow's Privacy Policy invokes the CCPA on its face, representing that Willow does "not offer individuals the ability to 'opt-out' of the selling or renting of personal information"—an opt-out right that exists only under that statute. ¶121; Cal. Civ. Code § 1798.120(a). For this reason, the Complaint specifically invokes the CCPA's broad definition of "sell," meaning "selling, renting, releasing, disclosing, disseminating, making available, transferring, or otherwise communicating orally, in writing, or by electronic or other means, a consumer's personal information by the business to a third party for monetary or other valuable

---

[13] *See also Allison v. PHH Mortgage*, No. 3:25-cv-05323 (N.D. Cal. June 25, 2026), ECF No. 1; *Shah v. Capital One Fin. Corp.*, No. 3:24-cv-05985 (N.D. Cal. Aug. 26, 2026), ECF No. 1; *Stasi v. Inmediata Health Grp. Corp.*, No. 3:19-cv-02353 (S.D. Cal. May 19, 2020), ECF No. 16.

consideration." ¶121 n.45; Cal. Civ. Code § 1798.140(ad)(1). And the Complaint specifically alleges that Willow disclosed consumers' personal information to third parties, ¶¶11, 32, 116, 205, and received consideration in the form of advertising benefits, ¶¶266-271. This suffices to allege a breach. *Brown v. Google LLC*, 2021 WL 6064009, at *10 (N.D. Cal. Dec. 22, 2021).[14]

Willow's only other argument is that its promise that "explicit authorization is obtained before using PHI for marketing purposes" somehow "relies on an opt-out, not opt-in, consent framework." Mot. 23. However, "authorization," and "PHI," are terms used in HIPAA, and that federal regulation, which Willow's Privacy Policy specifically invokes, requires a written, signed authorization before PHI may be used for marketing. 45 C.F.R. § 164.508(a)(3); *see id.* § 164.508(b), (c). The CMIA is the same. Cal. Civ. Code §§ 56.10(a), 56.11. Willow's Privacy Policy elsewhere emphasizes that Willow is subject to HIPAA and touts its "HIPAA compliance." ¶¶119, 251. Having adopted HIPAA's vocabulary, Willow cannot now assign that vocabulary a meaning HIPAA forecloses. *Swenson*, 3 Cal. 3d at 393. Accordingly, an opt-out is not "explicit authorization" under the statutes the Policy incorporates.[15] Further, as the Complaint details, and Willow fails to contend with, the Privacy Policy specifically says that Willow does "not offer individuals the ability to 'opt-out'." ¶121. Willow cannot simultaneously disclaim any opt-out mechanism and defend its

---

[14] For this reason, Willow's passing argument that Plaintiff "fails to allege any actual sales or profits on the part of Willow or identify any actual consideration it may have received from a third party," Mot. 23, is incorrect. The Complaint alleges Willow sells user data to advertisers and derives advertising and analytics value from doing so, ¶¶11, 32, 266–271; that constitutes "other valuable consideration" under Cal. Civ. Code § 1798.140(ad)(1). Nor did Plaintiff merely browse—she completed the intake, selected a GLP-1 prescription, and purchased it from Willow, paying for a service promised to be confidential and HIPAA-compliant. ¶¶125–126, 251–252.

Similarly, the disclosure that to "provide you with access to the Services, certain third parties that perform services for Willow Health Services …acting on our behalf… may have access to your personal information, including your Health Information" does not disclose sharing of information with third parties for their own independent marketing purposes—which is what the Complaint address. ¶¶8, 11, 15, 32–33, 208 (third parties use the data for their own commercial purposes). This disclosure expressly addresses *service providers* which, under the CCPA, may not use information for their own independent purposes. Cal. Civ. Code § 1798.140(ag)(1) (a "service provider" is one that processes personal information "on behalf of a business" pursuant to a written contract prohibiting it from retaining, using, or disclosing the personal information for any purpose other than for the business purposes specified in the contract, and from using the personal information for its own commercial purposes).

[15] Similarly, Willow's interpretation would require reading "explicit authorization" to mean "silence." And the plain meaning of the term "explicit" is the opposite: "fully revealed or expressed without vagueness, implication, or ambiguity," *Explicit*, Merriam-Webster Dictionary (2026).

conduct on the ground that Plaintiff failed to use one.[16] At most Willow has identified an ambiguity, which is construed against the drafter of a contract of adhesion "with peculiar force," *Congdon v. Uber Techs., Inc.*, 291 F.Supp.3d 1012, 1024 n.14 (N.D.Cal. 2018); Cal. Civ. Code § 1654, and which cannot be resolved here. *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1385 (2012).

### *IX. Unjust Enrichment—Pled in the Alternative and Covering Differing Subjects.*

Willow argues that no quasi-contract claim may lie where a valid express contract covers the same subject matter. Mot. 23–24. But Rule 8(d)(2) expressly permits pleading in the alternative, and the rule that an express contract forecloses a quasi-contract on the same subject is a merits determination—not a basis for dismissal at the pleading stage. *Rankin v. Glob. Tel*Link Corp.*, 2013 WL 3456949, at *13 (N.D. Cal. July 9, 2013) (alternative contract theories survive motion to dismiss).[17] Discovery may show that the quasi contract claim is not duplicative of the express contract claim—for example, if the written agreement did not exist or was not operative during the entire relevant period, or if it is not clear that the written agreement constitutes an express contract covering the same subject matter. *Id.* (citing *Melbye v. Accel. Payment Techs., Inc.,* 2012 WL 5944644, at *4 (S.D.Cal., Nov. 27, 2012)). Further, the claims do not cover the same subject matter or seek the same relief. The contract claim concerns Willow's promises about how it would handle Plaintiff's data; the restitution claim concerns the benefits Willow retained by monetizing it—data monetization, cost avoidance, competitive advantage, and enhanced platform value. ¶¶ 271(a)-(d). Plaintiff seeks restitutionary disgorgement of those benefits, ¶¶ 276-277, which her contract claims do not afford. *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 899–900 (C.D. Cal. 2024) (allowing unjust enrichment where plaintiff sought restitutionary disgorgement); *Doe v. GoodRx Holdings, Inc.*, 2025 WL 2052302, at *13, 16 (N.D. Cal. July 22, 2025) (same). Indeed, Willow's own position forecloses resolution now: it urges that the Privacy Policy binds Plaintiff for consent purposes while

---

[16] Willow's § 1798.120(a)(1) cite is a red herring. That the CCPA *permits* an opt-out framework says nothing about what Willow *promised*. A party may bind itself to more than the statutory floor, and by its own words Willow did.

[17] "[T]here are no requirements to include the magic words 'in the alternative' in making alternative claims" *Arnold & Assocs., Inc. v. Misys Healthcare Sys., a div. of Misys, PLC*, 275 F. Supp. 2d 1013, 1029 (D. Ariz. 2003).

denying that it promises anything Willow breached. Whether an enforceable express contract exists, and whether it covers the same subject matter as the restitution claim, are contested questions—which is precisely why alternative pleading is permitted.

### ***X. Invasion of Privacy—Plaintiff Seeks More Than Damages, Which Are Also Permissible.***

Willow's principal argument for dismissal of Plaintiff's invasion of privacy claim is that Plaintiff "prays only for [unavailable] monetary damages in connection with this claim." Mot. 24. Again, this is pure fabrication. ¶¶278-88. The Prayer requests "injunctive and other equitable relief." *See* Prayer ¶ C(i)–(iii). Willow's cited authority finds only that constitutional invasion of privacy claims do not support damages—not equitable relief. *Cousin*, 681 F. Supp. 3d at 1127; *Moore v. Rodriguez*, 2021 WL 2222590, at *20 (S.D. Cal. June 2, 2021); *see also White v. Davis,* 13 Cal.3d 757, 775 (1975) (constitutional invasion of privacy claim supports injunctive relief). In any event, contrary to *Cousin*, California appellate courts have repeatedly permitted damages for constitutional invasion of privacy claims. *Operating Eng'rs Loc. 3 v. Johnson*, 110 Cal. App. 4th 180, 192 (2003) (affirming constitutional invasion of privacy damages award); *Payton v. City of Santa Clara* 132 Cal.App.3d 152, 154 (1982) (complaint stated claim for invasion of privacy damages); *Porten v. University of San Francisco*, 64 Cal.App.3d 825 (1976) (same). *Cousin* and *Moore* both cite California appellate authority finding that the constitutional right to safe schools—not privacy—does not provide for damages. *See Clausing v. San Francisco Unified Sch. Dist.,* 221 Cal. App. 3d 1224, 1235 (Ct. App. 1990). This Court should follow appellate authority directly addressing the claim—not trial court opinions relying on inapposite authority.[18]

Finally, Willow's unsupported last-ditch argument that Plaintiff does not have an expectation of privacy in the HIPAA-protected medical information disclosed to third parties here is also contrary to Ninth Circuit authority. *See, e.g., In re Meta Pixel Healthcare Litig*., 647 F. Supp. 3d at 801 (plaintiffs have an "objectively reasonable expectation that their communications with their medical providers" particularly where defendant "does not point to a single case where a court found that the collection of the kinds of [medical] information at issue here did not") (citing *In re*

[18] The Complaint also encompasses the elements of common-law intrusion upon seclusion, ¶¶284-288. Should the Court conclude the claim must be plead as a common-law tort, Plaintiff requests leave to do so.

*Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 605–06).

### ***XI. The Class Allegations Should Not Be Stricken.***

Willow's bid to strike the class allegations based on a standalone class waiver found in a contract of adhesion fails because (1) motions to strike class allegations are disfavored and premature here, (2) the Terms containing the waiver are not properly before the court, (3) the claims here are outside the scope of the waiver, and (4) the standalone class waiver is unconscionable.

#### **A. A motion to strike class allegations is disfavored and premature.**

Motions to strike class allegations are generally disfavored and rarely granted. *See, e.g., Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1245 (C.D. Cal. 2011) ("[I]t is in fact rare to [strike class allegations] in advance of a motion for class certification."). Accordingly, "[a]ny doubt concerning the import of the allegations to be stricken weighs in favor of denying the motion to strike." *In re Wal-Mart Stores, Inc.*, 505 F. Supp. 2d 609, 614 (N.D. Cal. 2007). Here, a motion to strike class allegations is not proper because Willow cannot meet the standard it invokes—that "any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed." Mot. 14 (quoting *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009)). Every issue Willow's waiver argument raises is disputed and is better answered on a developed record—whether the Terms are properly before the Court at all, whether Plaintiff ever assented to these Terms or other Terms, whether the scope of the class waiver reaches Website conduct, and whether the waiver is enforceable under California law. Because Willow's motion raises many doubts, the motion should be denied. *In re Wal-Mart*, 505 F. Supp. 2d at 614.

#### **B. The waiver is found in a document that may not be considered here.**

"The grounds for [a motion to strike] must appear on the face of the pleading under attack, or from matter[s of] which the Court may take judicial notice." *SEC v. Sands*, 902 F. Supp. 1149, 1165 (C.D. Cal. 1995), *aff'd sub nom. S.E.C. v. First Pac. Bancorp*, 142 F.3d 1186 (9th Cir. 1998); *Keith*, 2023 WL 5618941, at *1 (denying request for judicial notice of documents on which motion to dismiss and strike relied). As set out above, the Terms and Conditions are neither incorporated by reference nor judicially noticeable. *Khoja*, 899 F.3d at 999, 1002; *see* § I.B, *supra*. Willow's Rule 12(f) motion therefore depends entirely on a contract introduced by declaration—authenticated by a declarant relying on the Wayback Machine, whose consent screenshot is from February 2026

and "appears to have downloaded only partially," and who describes the Terms only as the version "in effect in 2024" without attesting that it was in effect when Plaintiff visited. Green Decl. ¶¶ 4 n.1, 8–9, 11. It is clearly "subject to reasonable dispute" and not judicially noticeable. Fed. R. Evid. 201(b); *Khoja*, 899 F.3d at 999 (a court "cannot take judicial notice of disputed facts contained in such public records"); *Lee*, 250 F.3d at 689–90. It is also not mentioned in the Complaint anywhere and is not incorporated by reference. *Khoja*, 899 F.3d at 1002. The Terms, thus, cannot be considered and the motion to strike must fail accordingly.

**C. This case is outside the scope of the waiver.**

Even if it were proper to consider the Terms (and it is not) this litigation is outside of the scope of the narrow class waiver Willow seeks to enforce. This case concerns the unauthorized disclosure of Plaintiff's medical information through Tracking Technologies implemented on the Website—it does not address Willow's provision of prescription medications or the payment therefor. And, although the Terms govern both "the …website, located at https://startwillow.com (the 'Website')" and "the ordering of certain prescription medications and other products from Willow Health Service's affiliated pharmacies and pharmacy partners, and for the payment of these services (collectively, the 'Services')," Green Decl. Ex. A at 1, the narrow class waiver Willow seeks to enforce applies only to claims "related to your use of the Services." *Id*. at 1, 9 § 12.B. It says nothing about the Website—which Willow defines separately and uses distinctly throughout the Terms. *See, e.g., id*. §§ 1, 2, 3, 9.[19] Plaintiff's claims are thus outside the scope of the class waiver. *See, e.g., Rice v. Downs*, 248 Cal. App. 4th 175, 188 (2016) (relying on differing language in other places in the contract to find a dispute outside the scope of a provision); *Johnson v. Walmart, Inc*., 2021 WL 3269283, at *3 (E.D. Cal. July 30, 2021) (J. Drozd), aff'd, 57 F.4th 677 (9th Cir. 2023) (finding a dispute outside the scope of a provision on its face).

**D. The waiver is unconscionable, and Willow's own authority shows why.**

California law does not enforce a class waiver in a consumer contract of adhesion where

[19] Further, reading "Services" to swallow "Website" would render the separate use throughout the Terms surplusage. Cal. Civ. Code § 1641; *see also, e.g.,* Green Decl. Ex. A § 9 ("your access to the Website and Services,"); § 1 ("the content of the Website and the Services").

"disputes between the contracting parties predictably involve small amounts of damages" and the party with superior bargaining power is alleged to have "carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money." *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 577–78 (N.D. Cal. 2025) (quoting *Discover Bank v. Superior Court*, 36 Cal. 4th 148, 162–63 (2005)).[20] Just like in *Frasco*, a privacy case under CIPA and the CMIA, Willow argues that "the waiver should be enforced because the claims do not involve small sums of money." *Id.* But, as the *Frasco* Court there found California appellate courts "such waivers unenforceable due to unconscionability even when the plaintiffs' recovery would not be insubstantial" because "the unconscionability analysis is highly dependent on context." *Id.* The context here is materially indistinguishable from *Frasco*. As there, here, the waiver is in a contract of adhesion which was offered to users on a "take it or leave it" basis. *Id.*; *see also, e.g., Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1089-90 (9th Cir. 2024).[21] And, it is buried on the ninth page of a thirteen-page small text document, slipped into the end of a provision addressing other issues, without its own sub header is not "visually highlighted or differentiated in any way." *Frasco*, 349 F.R.D. at 578. In sum, the only authority that Willow provides supports finding that the waiver is unconscionable here.[22]

## CONCLUSION

Willow's Motion should be denied in its entirety. In the alternative, Plaintiff respectfully requests leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

---

[20] *Frasco* appropriately decided this issue on a motion for class certification (*id.*) and denied the request for judicial notice on the pleadings. *Frasco v. Flo Health, Inc.*, 2022 WL 21794391, at *2 (N.D. Cal. June 6, 2022). The Court should do the same here.

[21] Willow's contrary argument that because there are other GLP-1 providers the agreement was not "gun-to-your-head, take-it-or-leave-it" misunderstands the meaning of the contract of adhesion. The issue is not whether there are alternative providers (indeed, there are many alternatives to Flo Health's period tracking applications) the issue is whether Plaintiff had the opportunity to negotiate the contract. *Gatton v. T-Mobile USA, Inc.*, 152 Cal. App. 4th 571, 585 (2007) (finding procedural unconscionability "notwithstanding the availability of market alternatives," finding "consumers have little incentive to carefully scrutinize the contract terms or to research whether there are adequate alternatives with different terms"); *accord Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807, 817 (1981) (a contract of adhesion "relegates to the subscribing party only the opportunity to adhere to the contract or reject it"). She did not. It's procedurally unconscionable. *Armendariz v. Found. Health Psych. Servs.,* 24 Cal. 4th 83, 113-21 (2000); *Gatton*, 152 Cal. App. 4th at 585.

[22] *Arguelles-Romero v. Superior Court*, 184 Cal. App. 4th 825, 843-44 (2010), on which Willow relies, did not enforce a waiver; it vacated an order compelling arbitration and remanded.

Dated: September 11, 2026

Respectfully Submitted,

**ALMEIDA LAW GROUP LLC**

By: /s/ Victor J. Sandoval
Victor J. Sandoval (SBN 344461)
3415 S. Sepulveda Blvd., Suite 1121
Los Angeles, California 90034
t: (310) 896-5813
victor@almeidalawgroup.com
Lucas Coughlin(*pro hac vice*)
luke@almeidalawgroup.com

*Attorneys for Plaintiff and the Putative Classes*