GEORGE LLP
Keith J. Wesley (State Bar No. 229276)
kwesley@georgellp.com
Anthony T. Lombardo (State Bar No. 323216)
alombardo@georgellp.com
2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

Attorneys for Defendant
Willow Health Services, Inc.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| KRISTY WILCE,<br><br>Plaintiff,<br><br>vs.<br><br>WILLOW HEALTH SERVICES, INC.,<br><br>Defendant. | Case No. 2:26-cv-02465-DAD-AC<br><br>Hon. Dale A. Drozd<br>Magistrate Allison Claire<br><br>**DEFENDANT WILLOW HEALTH SERVICES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12 (B)(1), (B)(6), (F);**<br><br>Date: October 19, 2026<br>Time: 1:30 p.m.<br>Place: Robert T. Matsui Federal Courthouse<br>501 I Street, 2nd Floor<br>Sacramento, California 95814<br>Courtroom 4<br><br>Filed Date: July 15, 2026<br>Trial Date: None Set |

**TABLE OF CONTENTS**

**Page**


I. INTRODUCTION ........ 6

II. PLAINTIFF'S PROCEDURAL ARGUMENTS HAVE NO MERIT. ........ 6

A. Willow's Evidence and Factual Attack Arep Proper. ........ 6

B. Willow's Evidence Is Incorporated by Reference. ........ 6

C. The Green Declaration Is Proper and Supports Willow's Motion. ........ 9

III. PLAINTIFF LACKS STANDING ........ 11

IV. PLAINTIFF'S CONSENT DOOMS HER CASE. ........ 13

V. PLAINTIFF'S TEN CAUSES OF ACTION FAIL. ........ 14

A. Claims 1–2 (ECPA & Pen. Code § 631): Plaintiff Fails to Allege Content. ........ 14

B. Claim 3 (Pen. Code § 632): Plaintiff's Various Theories of Liability Fail. ........ 15

C. Claim 4 (CMIA): Plaintiff Fails to Allege Content/Risk of Unauthorized Use. ........ 16

D. Claims 5–7 (CCPA): These Claims Are Procedurally/Substantively Barred. ........ 16

E. Claim 8 (Breach of Contract): Plaintiff's Theories of Breach Hold No Merit. ........ 18

F. Claim 9 (Unjust Enrichment): This Claim Is Substantively Barred. ........ 18

G. Claim 10 (Invasion of Privacy): Monetary and Injunctive Relief Is Barred. ........ 18

VI. THE COURT SHOULD STRIKE THE CLASS ACTION ALLEGATION. ........ 19

VII. CONCLUSION ........ 20

## TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Allison v. PHH Mortg.*,
No. 25-CV-05323-RFL, 2026 WL 1353827 (N.D. Cal. May 14, 2026) ... 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... 12

*Blanco v. Cnty. of Kings*,
142 F. Supp. 3d 986 (E.D. Cal. 2015) ... 18

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) ... 18

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ... 19

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023) ... 13

*Hernandez v. Noom, Inc.*,
No. 1:23-CV-00641-JRR, 2023 WL 8934019 (D. Md. Dec. 27, 2023) ... 11

*Holly v. Alta Newport Hosp., Inc.*,
612 F. Supp. 3d 1017 (C.D. Cal. 2020) ... 17

*Hughes v. Vivint, Inc.*,
No. CV 24-3081-GW-KSX, 2024 WL 5179916 (C.D. Cal. July 12, 2024) ... 11

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) ... 11

*In re Meta Pixel Healthcare Litigation*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ... 14

*Kristy Wilce v. Willow Health Services, Inc.*
(Case No. 4:26-cv-05445-KAW)(2026) ... 16

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) ... 14

*Li v. Bank of Am., N.A.*,
No. 2:26-CV-02682-MCS-E, 2026 WL 1770137 (C.D. Cal. May 18, 2026) ... 16

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) ... 11, 20

**TABLE OF AUTHORITIES**
**(Continued)**

**Page**


*Nguyen v. Stephens Inst.*,
529 F. Supp. 3d 1047 (N.D. Cal. 2021) ........ 18

*Popa v. PSP Grp., LLC*,
No. C23-0294JLR, 2023 WL 7001456 (W.D. Wash. Oct. 24, 2023) ........ 13

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. 2024) ........ 15

*Sanders v. Apple, Inc.*,
672 F. Supp. 2d 978 (N.D. Cal. 2009) ........ 19

*Savage v. Glendale Union High School, Dist. No. 205, Maricopa County*,
343 F.3d 1036 (9th Cir. 2003) ........ 6, 11

*Shah v. Cap. One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) ........ 17

*Sisti v. Bosley Inc.*,
831 F. Supp. 3d 979 (C.D. Cal. 2026) ........ 7, 8, 9, 13

*Stark v. Patreon, Inc.*,
635 F. Supp. 3d 841 (N.D. Cal. 2022) ........ 7, 8

*Stasi v. Inmediata Health Grp. Corp.*,
501 F. Supp. 3d 898 (S.D. Cal. 2020) ........ 17

*UL LLC v. Space Chariot Inc.*,
250 F. Supp. 3d 596 (C.D. Cal. 2017) ........ 9

*United States v. Bradstreet*,
207 F.3d 76 (1st Cir. 2000) ........ 6

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) ........ 6, 7

*Ward v. Thompson*,
630 F. Supp. 3d 1140 (D. Ariz. 2022) ........ 13

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ........ 14


**STATE CASES**


*J.M. v. Illuminate Education, Inc.*,
588 P.3d 611 (Cal. 2026) ........ 16

## TABLE OF AUTHORITIES
**(Continued)**

**Page**

*People v. Superior Ct.*,
449 P.2d 230 (Cal. 1969) ....................16

**STATE STATUTES**

Cal. Code Civ. Proc.
§ 1795.150(b) ....................17
§ 1798.100 ....................17
§ 1798.100(a)–(c) ....................17
§ 1798.150 ....................17, 18
§ 1798.150(c) ....................17

Cal. Code Regs. tit. 11 § 7003 ....................18

Pen. Code
§ 631 ....................14, 15
§ 632 ....................15

**RULES**

Fed. R. Civ. P. 12(b)(1) ....................6

**OTHER AUTHORITIES**

Exemplar, *Black's Law Dictionary* (12th ed. 2024) ....................10

## I. INTRODUCTION

Plaintiff Kristy Wilce's Opposition does not rescue her complaint. She could have presented evidence—assuming she had any—to respond to Willow's factual attack on consent and her class action waiver. She did not. She could have addressed the shortcomings in her ten causes of action and demonstrated how she could cure them. She did not. The only reasonable outcome here is dismissal with prejudice. The Court should grant this Motion.

## II. PLAINTIFF'S PROCEDURAL ARGUMENTS HAVE NO MERIT.

### A. Willow's Evidence and Factual Attack Are Proper.

Plaintiff elevates form over substance. *See* Opp. At 12, Dkt. No. 10. Willow need not utter 'magic words' in order to present a factual attack under Rule 12(b)(1). A factual attack is made not by what a party states, *but by what it does*. "Once the moving party has converted the motion to dismiss into a factual motion ***by*** presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High School, Dist. No. 205, Maricopa County*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (emphasis added). Willow presented the Green Declaration and other admissible evidence to demonstrate consent and show that Plaintiff waived the right to bring a class action. That is enough to raise a factual attack on these issues.[1] Plaintiff did not present any evidence, thereby committing waiver.

### B. Willow's Evidence Is Incorporated by Reference.

There can be no doubt that Willow's Privacy Policy, its Terms and Conditions, and the text of its website are all incorporated into the complaint by reference and that their full text is fair game for a motion to dismiss. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."). Plaintiff, in arguing otherwise, disregards the point of this doctrine: to "prevent[]

[1] Insofar as the Motion did not explicitly say as to what part of the Complaint it was waging a factual attack, this Reply properly clarifies. *See, e.g., United States v. Bradstreet*, 207 F.3d 76, 80 n.1 (1st Cir. 2000) ("While a reply brief is not the proper place to raise new arguments, *it is proper for a court to look there for clarification.*") (citation modified).

plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Stark v. Patreon, Inc.*, 635 F. Supp. 3d 841, 850 (N.D. Cal. 2022). Why? Her Complaint omits critical aspects of startwillow.com that upend her case.

The plaintiff in *Sisti v. Bosley Inc.*, 831 F. Supp. 3d 979, 989–90 (C.D. Cal. 2026) (appeal pending) (citation modified) did the same thing, so the court incorporated by reference "Bosley's website." The court found that "Plaintiff's screenshots of the scheduling page included in the FAC omitted the textual notice Bosley provides on that webpage about its privacy policy and terms of service." *Id.*; *compare id. with* Green Decl., ¶ 9, Dkt. No. 7-6. That triggered the incorporation by reference doctrine, as plaintiffs cannot cherry-pick the portions of a website that might favor their case, while sidestepping those that "weaken—or doom—their claims." *Sisti*, 831 F. Supp. 3d at 990 (citation modified). After reviewing Bosley's website, the court discovered that the plaintiff consented to Bosley's privacy practices. *Id.* at 990. The court dismissed the case. *Id.* ("the Court concludes that all of Plaintiff's claims must be dismissed because Plaintiff was provided with reasonably conspicuous notice of Bosley's data disclosure policies, and that by clicking the 'Next step' button on the scheduler page, he manifested his assent to the same data disclosures that he challenges in his FAC.").

Plaintiff claims that "with the exception of the Privacy Policy, none of the other documents attached to, or included within, either of the Green or Lombardo declaration [sic] are referenced or relied on in the complaint and none can be incorporated by reference." Opp. At 6–7.[2] Not so. Plaintiff skirts the fact that startwillow.com—in its entirety—is at issue, and that the Complaint references startwillow.com throughout. *See Sisti*, 831 F. Supp. 3d at 989–90; *see also Ritchie*, 342 F.3d at 908. Indeed, Plaintiff inserts purported screenshot after purported screenshot of Willow's website, and she devotes numerous paragraphs that purport to describe startwillow.com. *See, e.g.*, Compl. ¶¶ 102–121, Dkt. No. 1. What she conveniently omits from her Complaint is any

[2] Plaintiff, as she concedes, cannot maintain that the Privacy Policy is not incorporated by reference. After all, she grounds her breach of contract claim on the Privacy Policy (which, as noted below, is the same document as Willow's Terms and Conditions).

allegation—or screenshot—that she, in order to become onboarded and purchase a GLP-1 product, had to consent to Willow's Privacy Policy and Terms. *See Sisti*, 831 F. Supp. 3d at 990, 993.

As the Green Declaration makes clear, the version of the website that Plaintiff encountered did not require entry of PII or PHI until *after* she consented to the Privacy Policy and the Terms and Conditions. Green Decl. ¶¶ 9, 10, Ex.'s A, B, Dkt Nos. 7-7, 7-8. Instead, during the initial marketing quiz (accessible through the "TAKE THE QUIZ" link) and after the user enters their weight, their weight goal, and past reasons for struggling to lose weight, they may voluntarily enter their email address, or "SKIP STEP." *Id.* ¶ 5. Finally, they are confronted with a click-box: "□ I have read and agree to these Terms & Conditions, Privacy Policy, and Telehealth Consent." *Id.* ¶ 9. The Terms & Conditions, Privacy Policy, and Telehealth Consent were set off in a different colored font indicative of a hyperlink, and the user had to actively click the box before proceeding. *Id.* What Plaintiff hides from view is that she *already consented to the privacy policy before she entered the information alleged in the Complaint.* Plaintiff's cherry-picking is not just why the doctrine of incorporation by reference applies here, *but why it exists, in the first place*. *See Stark*, 635 F. Supp. 3d at 850; *see, e.g.*, *Sisti*, 831 F. Supp. 3d at 990, 993.

Plaintiff also glosses over the fact that the Privacy Policy, Green Decl. Ex. B, to which she has no objection, both incorporates and is incorporated by the Terms and Conditions, Green Decl., Ex. A, to which she *does* have an objection. This position is odd, as the Privacy Policy and the Terms and Conditions form one, single agreement. The Privacy Policy states that "[b]y accessing this Site or the Services, you agree to this Privacy Policy and our Terms of Service." Green Decl., Ex. B, at 3, Dkt. No. 7-7. The Terms and Conditions states: "You agree that by visiting the Website, or by registering or using the Services, you, the individual . . . are entering into a legally binding agreement with Willow Health Services, Inc. . . . based on these Terms as well as Willow Health Services' Privacy Policy and Willow Health Services' Informed Consent, each of which are hereby incorporated by reference in these Terms **(collectively, the 'Agreement')**." *Id.*, Ex. A, at 3 (emphasis added). That Plaintiff objects to the Terms and Conditions but not the Privacy Policy—even though they are the same "agreement"—is another example of Plaintiff cherry-picking. *See Sisti*, 831 F. Supp. 3d at 989–90. There is no reason why the Court, as Plaintiff

urges, should incorporate by reference half of an agreement, when the Terms and Conditions confirm that she consented to data collection and cannot bring a class action. *See id.*; *see also* Green Decl., Ex. A, at 3, 10.

**C. <u>The Green Declaration Is Proper and Supports Willow's Motion.</u>**

Plaintiff argues that the "Green Declaration is insufficient on its face" because "its foundation is the Wayback Machine, not personal knowledge," and she argues that "[a] declarant with genuine personal knowledge of his own company's website and access to its records has no reason to reconstruct it from archive.org." Opp. at 14. Plaintiff's position does not add up.

*First*, courts routinely find that the Wayback Machine is reliable and contains accurate information. *E.g., UL LLC v. Space Chariot Inc.*, 250 F. Supp. 3d 596, 604 n.2 (C.D. Cal. 2017).

*Second*, Willow need not produce internal records when the Wayback Machine contains the same information. Green, the CEO of Willow, declared that the information in his declaration is reliable and accurate. Green's knowledge of the website is uncontested by Plaintiff and is certainly sufficient to authenticate the screenshots in his Declaration, whatever their provenance.

*Third*, Plaintiff argues that the Green Declaration makes it "impossible to assess which screenshots accurately reflect Plaintiff's experience." Opp. at 14. Not so, as the Green Declaration confirms.[3] Plaintiff's position is, moreover, self-defeating, as she, who allegedly accessed startwillow.com in *December 2024*, includes the *same* screenshots from startwillow.com that Gaby Jacobson, who alleged to have visited startwillow.com in *June 2024*, included in hers.[4]

---

[3] *See, e.g.*, Green Decl. ¶¶ 4 ("As of December 2024, startwillow.com's home page was as follows"), 5 ("The *quiz* that was in place in *December 2024* asks general questions about the user's weight loss goals. It does not ask them for any personally identifiable information. *The following sequence of screenshots is the entirety of the quiz.*") (emphasis added), 9 ("Below is what the user would see (while it appears to have downloaded only partially, the text and requirement to accept the various policies before proceeding are *accurate and consistent* with how the website appeared in December 2024))") (emphasis added); 10 ("Startwillow.com, *since it launched in May 2024*, has *always* required the consumer to first confirm that they consent to Willow's Terms and Conditions and Privacy Policy prior to starting the onboarding process, as described above.") (emphasis added).

[4] Since Jacobson never visited startwillow.com, *see* Mot. at 9, Lombardo Decl., Ex. B, where these screenshots are from (not to mention their dating) becomes even more of an issue, calls into question the Complaint's credibility, and undermines its foundation. Making matters worse, they are not in connection with Plaintiff's interaction with the website, as one of the screenshots mentions "Nice to meet you, *dee*!" (as opposed to "Kristy"). Compl. ¶ 107.

*Compare* Compl. ¶¶ 104–08 *with* Lombardo Decl., Ex. A, at ¶¶ 103–06, Dkt. No. 7-2.

Even worse, Plaintiff's copied-and-pasted pleading dooms standing—i.e., as Willow has argued, *see* Mot. at 11:15–20, Dkt. No. 7, Plaintiff fails to plead on what version of startwillow.com she (Wilce, not Jacobson or "*dee*," *see supra* § II.C n.4.) bases her Complaint and whether the Tracking Technology was configured to do what she (Wilce, not Jacobson or *dee*) claims it did in December 2024.[5] The screenshots purporting to show coding are undated and identical to those found in the *Jacobson* complaint. *See* Compl. ¶¶ 112, 115. (The failure to date these screenshots, and the inclusion of cropped screenshots that do not show the full screen or URL bars, is particularly striking when compared to the significant footnoting, which includes date and perma-link URLs, that accompany the background section on the purported Tracking Technology. *See* Compl. at 7 n.11–16 n.42.)

*Fourth*, Plaintiff raises various hair-splitting arguments that are losers:

- She claims that the "screenshot Willows offers to establish the consent flow is not from December 2024 at all. It is 'from February 2026' offered as 'an exemplar.'" Opp. at 14. But nothing about this screenshot involves the entry of personal information, much less sensitive data. And Green's use of the word "exemplar," confirms that the graphics contained in the Green Declaration, especially the text, are what Plaintiff would have seen. *See generally* Exemplar, *Black's Law Dictionary* (12th ed. 2024) (a "typical example; a standard specimen.").

- Plaintiff then complains that the "single screenshot said to show the consent checkbox did not render. The declaration concedes that it 'appears to have downloaded only partially,' and therefore does not reflect what any visitor would have seen." Opp. at 14. Green, indeed, confirms that "the text and requirement to accept the various policies before proceeding are accurate and consistent with how the website appeared in December 2024." Green Decl. ¶ 9. (emphasis added).

- Finally, Plaintiff says that the "Terms and Conditions are described only as those 'in effect in 2024'—not as of December 2024." Opp. at 14. This argument strains reason. If Green declares, under penalty of perjury, that the Terms were in effect in 2024, that only has one meaning: they were in effect in 2024. Green Decl. ¶ 11.[6]

---

[5] It also undermines her position that "the screen asking for an email attached to the Green declaration differs from that in the Complaint," and "the screen in the complaint does not allow a user to skip providing her email." Opp. at 15. The Complaint's screenshots are lifted from the *Jacobson* Complaint, which alleged that Jacobson accessed startwillow.com almost six months prior, in June 2024. *Compare* Compl. ¶¶ 104–08 *with* Lombardo Decl., Ex. A, at ¶¶ 103–07.

[6] Plaintiff elsewhere maintains that the Terms and Conditions were not in effect when Plaintiff used startwillow.com in "December 2024 and afterward." Mot. at 13. This argument holds no water. *First*, the Terms were in effect in December 2024 because they, as Green confirms, were in effect on startwillow.com in 2024. *Second*, Plaintiff alleges that she only visited startwillow.com once, as opposed to multiple times over the course or days, weeks, or months:

Given that Willow factually attacked the Complaint, if Plaintiff had evidence for these baseless arguments, she could have presented it (indeed, she was required to do so). *See Savage*, 343 F.3d at 1040. She did not.

## III. PLAINTIFF LACKS STANDING

Plaintiff argues, in response to Willow's position that the Complaint "fails to allege that any purported Tracking Technology, in fact, captured any identifying information that would allow anyone to link Plaintiff's name, for example, with any private information she may have entered," Mot. at 16, that the "Complaint does not rest on unique identifiers alone; it alleges that Plaintiff's email address and phone number were captured and transmitted. [Compl.] ¶¶ 106, 114, 116." Opp. at 17. Courts have held, however, that email addresses and phone numbers are not private information. *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) (email address and phone number not private information); *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022) (same). The Complaint, moreover, does not establish that any of the Tracking Technology was, in December 2024, configured to capture what Plaintiff claims it did. *Hughes v. Vivint, Inc.*, No. CV 24-3081-GW-KSX, 2024 WL 5179916, at *5 (C.D. Cal. July 12, 2024) ("As Plaintiff does not clearly allege what personalized information of hers *was actually collected*, she does not identify any harm to her privacy.") (emphasis added); *Hernandez v. Noom, Inc.*, No. 1:23-CV-00641-JRR, 2023 WL 8934019, at *8 (D. Md. Dec. 27, 2023). Plaintiff's screenshots are, to the contrary, the same ones that were used in the *Jacobson* complaint, *compare* Compl. ¶¶ 112, 115 *with* Lombardo Decl., Ex. A, at ¶¶ 111, 114, which alleged that Jacobson visited startwillow.com in June 2024, *six*

---

"During this *visit*, Plaintiff Wilce completed the initial quiz process, which required her to input answers to sensitive questions including her weight, height, weight loss goals, medical history, and current medical regimen." Compl. ¶ 124. It makes no sense to think that she had an online visit that lasted more than a few hours, much less a whole day, month, or year. *Third*, even if she took the quiz and purchased a GLP-1 product in December 2024, it is unclear why it matters if she revisited the website in 2025 or 2026. As a customer of startwillow.com, there would be no reason for her to redo the quiz and submit the same information she entered previously. There would thus be no basis to assert that she suffered any privacy issues then. And if she, in December 2024, just browsed startwillow.com and never took the quiz, that confirms that she has no standing at all, as she does not identify when she purportedly transmitted any data to startwillow.com and whether the purported Tracking Technologies were configured to collect same.

*months before* Plaintiff's visit.[7] They are not relevant here.

Plaintiff further contends that "Advanced Matching matches visitors to "TikTok user accounts, *or other personally identifiable profiles created by TikTok to identify non-users*," which means that "Plaintiff need not have an account to be tracked and de-anonymized by TikTok " Opp. at 17. But there are no allegations that TikTok ever made such a "profile[]" for Plaintiff, much less what the profile consisted of data-wise or how it appeared. Plaintiff cannot demonstrate that Advanced Matching ever collected her data.

---

[7] Plaintiff's argument that "the Complaint alleges that the Tracking Technologies *were in-fact* configured to capture sensitive information and reproduces both the configuration and the resulting transmissions form Willow's own Website" is conclusory and does not serve her position. Opp. at 18. For there is nothing in the Complaint that plausibly demonstrates how, when, or by whom these reproductions were done. Plaintiff has pointed to several paragraphs to demonstrate configuration, Opp. at 18, but each falls short.

- *Paragraphs 100, 101*: These concern Microsoft Tracking Products. Plaintiff alleges that "network traffic shows Clarity and Bing receiving full-string URLs which disclose that users were seeking health care services." Compl. ¶ 100. This is conclusory. *First*, no such network traffic is provided in the Complaint. There is thus no way to ascertain what "network traffic" means or, in reality, entails. *Second*, when is this purported network traffic from? *Third*, how do the purported URLs disclose that users were seeking health care services? Is someone simply accessing and reviewing the homepage of startwillow.com (but not purchasing any GLP-1s) "seeking healthcare services"? No PII or PHI would be transmitted from such a cursory visit. Paragraph 101 alleges that Microsoft can track "a specific user's behavior across page views." What pages? The Home Page to the Help page, neither of which require PII or PHI? Further undermining these allegations is that Plaintiff later concedes that "The Tracking Technology is active throughout the quiz and is set up to capture user interactions and transmit this data to at least Taboola and TikTok. The Pinterest Pixel is present in the onboarding section following the quiz." Compl. ¶ 109. Plaintiff fails to mention Microsoft. *See id.*
- *Paragraph 102*: This paragraph is wholly conclusory. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements.").
- *Paragraphs 109–112*: These, like ¶¶ 100–02, were lifted from the *Jacobson* Complaint, which is based on a different timeline. (And the fact that Jacobson never actually visited startwillow.com, the timeline is not just different, but unknown. *See* Mot. at 9, Lombardo Decl., Ex. B.) They are not relevant to how startwillow.com was configured during Plaintiff's interaction with the site. *Cf. Ashcroft*, 556 U.S. at 678 ("Where a complaint pleads facts that are *merely consistent* with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.") (citation modified).
- *Paragraph 115*: This allegation is implausible, as noted next. *See infra* § III.
- *Paragraph 126*: This paragraph is wholly conclusory. *Ashcroft*, 556 U.S. at 663.

## IV. PLAINTIFF'S CONSENT DOOMS HER CASE.

Plaintiff's position on consent is a loser. In 2024, when Plaintiff alleged that she logged in, there were two quizzes on startwillow.com. Green Decl. ¶¶ 5, 8 . The first, accessible through the "TAKE THE QUIZ" link, is a marketing quiz. *Id.* ¶ 5. Nowhere is the user required to enter any PII. *Id*. Entering an email is optional, *id.* ¶ 5(g), and there are no allegations that Plaintiff entered hers at this juncture. Any data she may have entered in this quiz thus has no link to her identity. That is fatal to liability.[8]

As for the second quiz, Plaintiff could have only entered her information after checking a box confirming that she read and agreed to Willow's Terms, Privacy Policy, and Telehealth Consent. Green Decl. ¶ 9; *see also id.* ¶ 10 (Willow "has always required the consumer to first confirm that they consent to Willow's Terms and Conditions and Privacy Policy prior to starting the onboarding process . . . ."). This consent defeats her Complaint. *See, e.g.*, *Sisti*, 831 F. Supp. 3d at 990.

Plaintiff's claim that "there is no consent because a reasonable user would have not understood from Defendant's generalized disclosure that data would be used in violation of HIPAA" does not change this. Opp. at 19. The Privacy Policy, when read in full, and not cherry-picked to Plaintiff's liking, explicitly notified the Plaintiff of the "specific practice" at issue. It explained that pixels, cookies, and web beacons could or would be placed on her computer for marketing-optimization purposes. Green Decl. Ex. B, at 6–7.[9]

---

[8] *See Popa v. PSP Grp., LLC*, No. C23-0294JLR, 2023 WL 7001456, at *5 (W.D. Wash. Oct. 24, 2023), *aff'd sub nom. Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025), *and aff'd sub nom. Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025) ("Popa does not allege . . . *that Defendants were able to connect the information Clarity collected to her identity*.") (emphasis added); *see also Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 65–66 (W.D. Pa. 2023), *aff'd as modified*, 148 F.4th 153 (3d Cir. 2025).

[9] Willow is, moreover, not subject to HIPAA's heightened consent rules because it "is not a 'covered entity.'" Green Decl., Ex. B, at 4; *see also id.*, Ex. A, at 1 ("Willow Health Services IS NOT A MEDICAL PROVIDER."). Willow "may be considered a 'business associate' of Medical Practice and our affiliated pharmacies." *Id.*, Ex. B, at 4. But Plaintiff does not plausibly allege that Willow acted as a business associate *vis-à-vis* her data. (She, instead, suggests that it worked with technology companies, *none of which are covered entities*. *Cf. Ward v. Thompson*, 630 F. Supp. 3d 1140, 1156 (D. Ariz. 2022) ("T-Mobile is not a covered entity under HIPAA and therefore HIPAA's PHI disclosure requirements do not apply to it."). Willow, finally, confirms that "third parties that perform services for Willow Health Services, such as hosting, analytical,

Plaintiff's comparison of this case with *In re Meta Pixel Healthcare Litigation*, 647 F. Supp. 3d 778 (N.D. Cal. 2022) (*In re Meta Pixel*) is tenuous. The court was "skeptical that a reasonable user who viewed Meta's policies would have understood that Meta was collecting protected health information." *Id*. at 793–94. The Court cannot reach the same conclusion here, as the Privacy Policy permits third party access to "Health Information." Green Decl., Ex. B, at 5. The court in *In re Meta Pixel* also flagged that "*even if* a reasonable Facebook user would have understood that Meta's data collection included health information from their medical provider, that must still be squared with its representation that it 'requires' any third-party to have 'lawful rights to collect, use and share your data before providing any data to us.'" 647 F. Supp. 3d at 794. The court recognized that "require" could mean different things—a consumer could read it to mean that "Meta required a HIPAA-compliant authorization before receiving such information," and not just that "all developers using the Meta Pixel have told Meta that they may lawfully share this information with them." *Id*. No such ambiguity is present in Willow's Privacy Policy.

*Lakes*, which distinguished *In re Meta Pixel*, controls. *Lakes* confirms that so long as the consumer knows what type of information is being collected, a "granular" policy that delineates every aspect of data collection is unnecessary. *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1057 (N.D. Cal. 2025). Willow's Privacy Policy satisfies *Lakes*: it tells the user that their data, including Health Information, may be collected by third parties performing "analytical," "data management," or "similar services" for Willow, and it, too, specifies the means of collection—e.g., cookies, pixels, and web beacons. Green Decl., Ex. B, at 5–7.

## V. <u>PLAINTIFF'S TEN CAUSES OF ACTION FAIL.</u>

### A. <u>Claims 1–2 (ECPA & Pen. Code § 631): Plaintiff Fails to Allege Content.</u>

Plaintiff argues that the information that the Tracking Technologies allegedly intercepted—names, email addresses, phone numbers, URLs, and clicks—, contrary to *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021), constituted content because such data "conveys the 'substance, purport, or meaning of [a] communication." Opp. at 21. If that

---

data management or other similar services . . . may have access to your . . . Health Information." Green Decl., Ex. B, at 5. Plaintiff's position on HIPAA, based on the foregoing, is suspect.

is the position Plaintiff is taking, then she needs to demonstrate that the data she transmitted on startwillow.com actually has a sensitive or private "substance," "purport," or "meaning." She does not. *First*, the only URL that Plaintiff provides is http://app.startwillow.com/onboarding/ questionnaire/have-allergies","ref";" ","if":false,"sh":982,"sw":1512,"mh":"817db39b", "is_eu":false,"ecm_enabled":false. *Id.* ¶ 112. This did not come from Plaintiff's startwillow.com visit; it was lifted from the *Jacobson* Complaint, which is based on a different timeline. *Compare* Compl. ¶¶ 112 *with* Lombardo Decl., Ex. A, at ¶ 111. *Second*, nothing about this URL contains sensitive information. It mentions "allergies," but the code-based context (a garbled mess of numbers and letters) lacks textual indicators as to how this question, assuming it was one, was answered, or by whom. It, indeed, contains the characters "have-allergies" but then notes "false." Does the respondent have allergies or not? Who is the respondent? Is it "dee"? Who is "dee"? What information was entered? *Third*, Plaintiff fails to allege how any clicks on the part of Plaintiff conveyed any meaning. Without allegations as to how Plaintiff's clicks were converted into code or some other communicative medium (from which meaning could be gleaned), the Court must improperly speculate whether (i) the click was intercepted; (ii) whether it was meant to signify something; and (iii) how to objectively ascertain that 'something.' It cannot.

**B. <u>Claim 3 (Pen. Code § 632): Plaintiff's Various Theories of Liability Fail.</u>**

Plaintiff concedes that Willow cannot be liable under Cal. Pen. Code § 632 on an eavesdropping theory. Opp. at 21. And Plaintiff's aiding and abetting theory of liability fails, as Plaintiff does not sufficiently allege that the companies behind the purported Tracking Technologies (i.e., what would be the principals) are liable under § 632. *See Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104 (S.D. Cal. 2024) (§ 631 context) (under CIPA, the plaintiff must allege *that a principal has violated* one of the first three clauses of the wiretapping provision of CIPA, and that the defendant aided, agreed with, employed, or conspired with that person or entity to commit those unlawful acts.). Specifically, Plaintiff fails to allege intent. *See id.* The Complaint, instead, alleges that Willow, "intentionally implemented and activated this recording technology." Compl. ¶ 187. There are no allegations that these third parties intended to eavesdrop on a confidential communication—i.e., a private interaction between Willow and the consumer.

*See People v. Superior Ct.*, 449 P.2d 230, 237 (Cal. 1969) ("[T]he statute does not isolate the actor's intent from the object to which it is directed, namely the confidential communication . . . . In short, it is not the purpose of the statute to punish a person who intends to make a recording but only a person who intends to make a recording of a confidential communication. For example, a person might intend to record the calls of wild birds on a game reserve and at the same time accidentally pick up the confidential discussions of two poachers. To hold the birdwatcher punishable under the statute for such a fortuitous recording would be absurd."). Nor could there be, as the Privacy Policy allows the very data-collection practices of which Plaintiff complains. Green Decl., Ex. B, at 5–7.

**C. Claim 4 (CMIA): Plaintiff Fails to Allege Content/Risk of Unauthorized Use.**

Plaintiff fails to state a claim under *J.M. v. Illuminate Education, Inc.*, 588 P.3d 611, (Cal. 2026). "[T]he primary inquiry with regard to breach of confidentiality is whether the information is exposed to a significant risk of unauthorized access or use." *Id.* at 621. Plaintiff does not allege such a risk. *See, e.g.*, *Li v. Bank of Am., N.A.*, No. 2:26-CV-02682-MCS-E, 2026 WL 1770137, at *1 (C.D. Cal. May 18, 2026). She simply parrots what the Privacy Policy, to which she consented, *permits*: "Defendant allowed third parties to access and collect Plaintiff's . . . private medical information through the Tracking Technology, which these third parties used for their own purposes including targeted advertising and data analytics." Compl. ¶ 208; *see also* Green Decl., Ex. B, at 5 ("[T]hird parties that perform services for Willow Health Services, such as hosting, analytical, data management or other similar services . . . may have access to your . . . Health Information.") These are not the kinds of risks that *J.M.* contemplates as actionable—e.g., physical theft, data breaches, and accidental leaks. *See* 588 P.3d at 621–22.

**D. Claims 5–7 (CCPA): These Claims Are Procedurally/Substantively Barred.**

Plaintiff argues that she properly served the required *pre*-suit notice under the CCPA. She did serve a pre-suit notice, on May 5, 2026, but not as to this *action*. Her notice preceded, and thus pertained to, *Kristy Wilce v. Willow Health Services, Inc.* (Case No. 4:26-cv-05445-KAW) (N.D. Cal. June 5, 2026) (*Wilce I*). *See* Lombardo Decl., Ex. C. She then dismissed that case, on July 9, 2026. Between then and the day she filed *this* action in *this* Court, on July 15, 2026, she

did not serve any notice under Cal. Civ. Code § 1795.150(b), which provides that "[a]ctions pursuant to this section may be brought by a consumer if, prior to initiating ***any*** action against a business for statutory damages on an individual or class-wide basis, a consumer provides a business 30 days' written notice identifying the specific provisions of this title the consumer alleges have been or are being violated." (Emphasis added.) Plaintiff claims that because she also prays for actual damages, she was not required to serve a pre-suit notice. Opp. at 25. Not so. The statute, to the contrary, provides that "[n]o notice shall be required prior to an individual consumer initiating an action ***solely*** for actual pecuniary damages suffered as a result of the alleged violations of this title." *Id*. (emphasis added). Her claim for actual damages fails, in any event, as she fails to plausibly allege actual harm.[10] No matter how this claim is analyzed, it is barred.

Plaintiff next claims that Cal. Civ. Code § 1798.100(a)–(c) somehow confers a private right of action. Opp. at 25. But none of her cases say that. *See id.* Each of them, instead, confirms that only § 1798.150 does. *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1048 (N.D. Cal. 2025) (recognizing "limited civil cause of action" under § 1798.150); *Allison v. PHH Mortg.*, No. 25-CV-05323-RFL, 2026 WL 1353827, at *8 (N.D. Cal. May 14, 2026) (same); *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 924 (S.D. Cal. 2020) (analyzing § 1798.150 claim). Plaintiff also asserts that "Section 1798.150's private right of action applies to section 1798.100," Opp. at 25, but that runs counter to § 1798.150(c): "The cause of action established by this section shall apply only to violations as defined in subdivision (a) and ***shall not be based on violations of any other section of this title***. Nothing in this title shall be interpreted to serve as the basis for a private right of action under any other law." (Emphasis added).

Finally, Plaintiff maintains that § 1798.150 applies here, even though she does not allege a data breach. Opp. at 25. Even if the Court found that this section applies where a defendant

---

[10] *Compare* Compl. ¶ 132 *with Holly v. Alta Newport Hosp., Inc.*, 612 F. Supp. 3d 1017 (C.D. Cal. 2020) (hospital patient failed to allege she suffered actual damages resulting from hospital's alleged publishing of patient's personal data without permission: patient's bare allegation of increased risk of identity theft was too speculative, patient's allegations concerning her physical, mental, and emotional pain were too sparse and conclusory, patient failed to support allegations concerning mitigation or remediation efforts, and patient failed to support claim concerning decreased value of personal data.).

discloses another's personal information "without [their] consent," as Plaintiff urges, *id*. (internal quotations omitted), it would not matter, as Plaintiff consented to data collection. *See supra* § IV.

**E. Claim 8 (Breach of Contract): Plaintiff's Theories of Breach Hold No Merit.**

Plaintiff's position on breach is specious. *First*, she argues that an average consumer would understand that the word "selling" means "sharing"—such that Willow breached the Privacy Policy, which states that Willow would not *sell* data, by *sharing* Plaintiff's data. That misconstrues the meaning of "sell" and "share." It is also unintuitive to think that a consumer would somehow construe "sell" against the statutory definition from the CCPA. Plaintiff's position contradicts the controlling "reasonable consumer" standard. *Calhoun v. Google, LLC*, 113 F.4th 1141, 1149 (9th Cir. 2024) ("[T]he governing standard is what a 'reasonable user' of a service would understand they were consenting to, *not what a technical expert would*.") (emphasis added). And this standard complements the CCPA, which requires privacy disclosures to "be easy to read and understandable to consumers." Cal. Code Regs. tit. 11, § 7003. "[T]hey shall use plain, straightforward language and *avoid technical or legal jargon*." *Id*. *Second*, Plaintiff argues that it breached the Privacy Policy by not following HIPAA's consent requirements. Opp. at 27. This argument is a non-starter. *See supra* § IV n.7.

**F. Claim 9 (Unjust Enrichment): This Claim Is Substantively Barred.**

Plaintiff claims that she can plead, as alternative theories, a breach of contract claim alongside an unjust enrichment claim. Opp. at 28. "But to do so, [she] must allege that the supposed contract between [her] and [Willow] was unenforceable or void." *Nguyen v. Stephens Inst.*, 529 F. Supp. 3d 1047, 1057 (N.D. Cal. 2021). She alleges the opposite. Compl. ¶ 249.

**G. Claim 10 (Invasion of Privacy): Monetary and Injunctive Relief Is Barred.**

As this District has made clear and contrary to what Plaintiff contends, the "California Constitutional right to privacy contained in article I, section I does not give rise to a cause of action for money damages." *Blanco v. Cnty. of Kings*, 142 F. Supp. 3d 986, 1001 (E.D. Cal. 2015) (rejecting Plaintiff's cases, *Payton* and *Porten*). Plaintiff argues that she can still seek an injunction. But nowhere does she allege, other than by conclusory assertions, Compl. ¶¶ 179, 192, that she would suffer irreparable harm absent injunctive relief. *City of Los Angeles v. Lyons*, 461

U.S. 95, 111 (1983) ("The equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again—a 'likelihood of substantial and immediate irreparable injury.'"). That is not enough, and it compels dismissal of this claim.

**VI. <u>THE COURT SHOULD STRIKE THE CLASS ACTION ALLEGATION.</u>**

Striking a class action allegation can be done at the pleadings stage, and, in light of Plaintiff's consent and lack of standing, the Court should do so. *See Sanders v. Apple, Inc.*, 672 F. Supp. 2d 978, 989–90 (N.D. Cal. 2009). To combat this reality, Plaintiff engages in wordplay—that "Services" and "Website" have nothing to do with each other, such that if the waiver only mentions "Services" it does not cover "Website." Opp. at 31. But "Services," as Plaintiff concedes, is a collective definition encompassing the consumer's

> access to and use of the Willow Health Services Inc. ("Willow Health Services") website, located at https://startwillow.com (the "Website") and the Willow Health Services mobile applications and services that facilitate direct access to certain women's health services provided by physicians who are contracted with or employed by affiliated physician practices (the "Physician(s)"), for the ordering of certain prescription medications and other products from Willow Health Service's affiliated pharmacies and pharmacy partners, and for the payment of these services (collectively, the "Services"). Green Decl., Ex. A, at 3.

The intervening defined terms, as common-sense dictates, simply ease readability, similar to what Plaintiff does in her Opposition. *See* Opp. at 8. Arguing that "Services" does not include the "Website" makes even less sense as Willow is an ***online*** GLP-1 provider. Plaintiff, moreover, centers her case around her purchase of GLP-1s—i.e., her "ordering of certain prescription medications," which, even under her construction, falls, based on text and syntax, under "Services." Plaintiff's position also runs counter to the Privacy Policy—which is part of the Terms, *see supra* § II.B—that confirms "Services" includes "contacting [Willow], and/or using any [Willow] mobile and online applications or services." Green Decl., Ex. B, at 3. Plaintiff's position on unconscionability is just as odd: aside from her self-serving read on case law, she fails to reconcile her stance that the Terms are unconscionable but the Privacy Policy (which is part of the Terms) is not. Her position is suspect.

/ / /

## VII. CONCLUSION

The Court, for these reasons, should grant the Motion without leave to amend.[11] [12]

DATED: September 21, 2026

GEORGE LLP
Keith J. Wesley
Anthony T. Lombardo

By: */s/Anthony T. Lombardo*
Anthony T. Lombardo
Attorneys for Defendant
Willow Health Services, Inc.

[11] The Court should deny the request for judicial notice, as the pleadings in *Mikulsky*, or any case, like *Therapymatch*—the other pleading Plaintiff seeks judicial notice—have no relevance here. *See* Sandoval Decl., Ex.'s. 1, 2, Dkt. No. 10-6, 10-7. And Plaintiff's explanations as to why the Court should consider them do not make sense. RJN, at 2, Dkt. No. 10-5. More importantly, they have no precedential or evidentiary value: they are mere allegations.

[12] Errata: Willow withdraws the following statements that were inadvertently included in its moving papers: Mot. at 21:21–22 ("Plaintiff did not actually enter any information"), 26:11 ("she never accessed startwillow.com"). This does not constitute a factual admission or stipulation.